**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-03183

REFUGIO RAMIREZ OVANDO, CAROLINE DIAS GONCALVES, J.S.T., and G.R.R., and all those similarly situated,

        Plaintiffs,

  v.

KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security, TODD M. LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement, and ROBERT GUADIAN, in his official capacity as Director of the Denver Field Office of the U.S. Immigration and Customs Enforcement,

        Defendants.

### PLAINTIFFS' MOTION FOR CLASS CERTIFICATION[1]

Congress prohibits immigration officers from making indiscriminate arrests without a warrant. Before making a warrantless arrest, the Immigration and Nationality Act (INA) requires agents to make individualized probable cause determinations that: (1) the person is in the United States in violation of immigration laws, *and* (2) the person is likely to escape before a warrant can be obtained. 8 U.S.C. § 1357(a)(2). *See also* 8 C.F.R. § 287.8(c)(2)(ii). Yet, following government directives, Immigration and Customs Enforcement (ICE) agents in Colorado, in both individual stops and large-scale raids, have

---

[1] **Certification Pursuant to D.C.Colo.LCivR. 7.1:** Plaintiffs' counsel conferred with Defendants about the relief requested herein by contacting Peter McNeilly and Kevin Traskos of the U.S. Attorneys' Office in the District of Colorado before filing this Motion. As of the filing of this Motion, Defendants did not take a position on the relief requested.

arrested hundreds of people without assessing their risk of flight as required. Without this Court's intervention, ICE's tactics will only get worse. The Administration is committed to ramping up immigration arrests, even when doing so requires agents to "push the envelope."[2] Class-wide injunctive relief is necessary to protect the targets of Defendants' practice of effecting warrantless arrests in violation of law.

Plaintiffs seek to certify the following class:

> All persons since January 20, 2025, who have been arrested or will be arrested in this District by immigration officers without a warrant and without a pre-arrest, individualized assessment of probable cause that the person poses a flight risk.

The proposed class satisfies the requirements of Rules 23(a) and 23(b)(2).

Certification is appropriate under Rule 23(a). First, the class is sufficiently numerous, as hundreds of people have been detained in warrantless arrests without the required probable cause determinations. Meanwhile, an estimated 169,000 undocumented immigrants live in Colorado at daily risk under Defendants' indiscriminate practices.[3] Second, all class members have or will suffer the same injury: warrantless arrest in violation of 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii). And the class raises common questions that will generate common answers, including whether Defendants have a policy or practice of effecting warrantless arrests without any

---

[2] Brittany Gibson, et al., Noem tell ICE to supercharge immigrant arrests, Axios (May 28, 2025), https://perma.cc/AEU6-JXCV; Jose Olivares, US Immigration Officers Ordered to Arrest More People Even Without Warrants, The Guardian (June 4, 2025), https://perma.cc/4SSK-EQUC.

[3] Immigrants in Colorado, American Immigration Council (Sept. 30, 2025), https://perma.cc/55XL-4XQ4.

investigation into flight risk and whether that practice violates federal law. Third, Plaintiffs' legal claims are typical of those whom they seek to represent, as each was arrested without flight risk assessment. Finally, Plaintiffs are represented by qualified counsel with experience litigating class actions and cases involving the rights of noncitizens.

The proposed class also satisfies Rule 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the class by summarily arresting individuals without any investigation into flight risk. The class also would be amenable to uniform group remedies, such as declaring Defendants' practice unlawful and enjoining them from effecting warrantless arrests absent reason to believe a person is likely to flee.

Class-wide relief is appropriate to constrain ICE's abuse of authority and protect Coloradans from being subjected to unlawful arrests. Plaintiffs respectfully request that the Court grant class certification under Rule 23(b)(2), appoint the Plaintiffs as Class Representatives, and appoint the undersigned as Class Counsel. Plaintiffs also request that the Court grant provisional certification of the proposed class for the purpose of entering a preliminary injunction in this matter.

**I.    ARGUMENT**

A plaintiff whose suit satisfies the requirements of Rule 23 has a "categorical" right "to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). The "suit must satisfy the criteria set forth in [Rule 23(a)] (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in [Rule 23(b)]." *Id*. As outlined below, Plaintiffs' proposed class satisfies all four of Rule 23(a)'s requirements.

Certification is appropriate under Rule 23(b)(2) because Defendants "ha[ve] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," and "a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (internal citation omitted); *see also Shook v. Bd. of Cnty Comm'rs*, 543 F.3d 597, 604 (10th Cir. 2008).

## II. THE PROPOSED CLASS SATISFIES RULE 23(a)'s REQUIREMENTS

### A. The Proposed Class Is So Numerous That Joinder Is Impracticable

The proposed class is sufficiently numerous to make joinder impracticable. Factors that inform whether joinder would be impracticable include "the nature of the action, the size of the individual claims, and the location of the members of the class." *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014) (internal citation omitted). "[T]here is no set formula to determine if the class is so numerous that it should be so certified." *Id.* (internal citation omitted). Because the numerosity requirement is a "fact-specific inquiry," this Court has "wide latitude" to determine if it is satisfied. *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006). In determining the numerosity requirement, "the exact number of potential members need not be shown," and a court "may make 'common sense assumptions' to support a finding that joinder would be impracticable." *Neiberger v. Hawkins*, 208 F.R.D. 301, 313 (D. Colo. 2002) (internal citation omitted). The determination turns not solely on the size of the class, but on the facts. *Pueblo of Zuni v. United States*, 243 F.R.D. 436, 444 (D.N.M. 2007).

In particular, the Tenth Circuit has acknowledged that because "[j]oinder of

unknown individuals is certainly impracticable, . . . the fact that the class includes unknown, unnamed future members also weighs in favor of certification." *Colo. Cross Disability Coal.*, 765 F.3d at 1215 (internal citation omitted); *see* 32B Am. Jur. 2d Federal Courts § 1507 (same).

The proposed class easily meets the numerosity requirement. First, though ICE has declined to disclose the precise number of Coloradans swept up in large-scale raids during the first half of 2025,[4] estimates are in the hundreds.[5] ICE's actions included collateral arrests of virtually everyone who happened to be present during ICE's raids, without the legally required assessment of flight risk.[6] During raids of seven apartment complexes in the Denver metro area with high Latine populations, heavily armed officers went door-to-door, questioning people about their immigration status.[7] Plaintiff J.S.T.

---

[4] Megan Ulu-Lani Boyanton, How President Trump's shifting deportation push has played out in Colorado: 'There's no small moves', The Denver Post (June 19, 2025), https://perma.cc/FS2Z-UD83 (describing lack of federal transparency on immigration arrest data in Colorado); Megan Ulu-Lani Boyanton, As ICE claims it's ramped up immigration enforcement, the number of Colorado arrests, deportations is still unclear, The Denver Post (Mar. 13, 2025), https://perma.cc/MM95-QXD8; Jennifer Brown, ICE hasn't revealed how many people were detained during raids of Denver, Aurora apartment complexes, The Colorado Sun (Feb. 7, 2025), https://perma.cc/47LK-KWCV; Allison Sherry, et al., As ICE expands its Colorado efforts, many without criminal records are caught in a wide net, CPR (Apr. 7, 2025), https://perma.cc/M2GT-RNBJ.

[5] Megan Ulu-Lani Boyanton, How President Trump's shifting deportation push has played out in Colorado: 'There's no small moves', The Denver Post (June 19, 2025), https://perma.cc/FS2Z-UD83.

[6] Ex. A, Altman Decl. ¶¶ 10-11.

[7] Ex. B, J.S.T. Decl. ¶¶ 10, 16; Janet Oravetz, et al., ICE raids target at least 7 locations in Denver, Aurora, Thornton, 9 News (Feb. 5, 2025), https://perma.cc/M2GG-AVL5; Kevin Beaty, et al., ICE and federal agents raid multiple metro Denver apartments early Wednesday, Denverite (Feb. 5, 2025), https://perma.cc/L9T7-ZY4K; Sam Tabachnik, ICE Raids Hit Buildings in Aurora and Denver; Feds Say they Targeted Tren de Aragua Gang,

was one of an estimated 30 residents detained in those raids.[8] J.S.T. was not named in any ICE warrant and was instead arrested merely because he was present during the mass action and could not provide proof of citizenship. *See, e.g.*, Ex. B, J.S. T. Decl. ¶¶ 11, 13; Ex. C, Jordan Decl. ¶¶ 8-17. Like others, agents conducted no assessment of his risk of flight before taking him into ICE custody. Ex. B, J.S.T. Decl. ¶¶ 11-13. Similarly, Plaintiff G.R.R. was one of at least 60 people detained solely based on his suspected immigration status when ICE agents raided a nightclub where migrants were gathered. Ex. D, G.R.R. Dec ¶ 6.[9] The government admitted that it simply arrested "[t]hose believed to be in the US illegally."[10] In keeping with ICE's policy to meet ever-increasing arrest quotas,[11] it has detained scores of people in collateral arrests, filling

---

The Denver Post (Feb. 5, 2025), https://perma.cc/PP7W-D5TS; Denver apartment complex targeted by federal authorities Wednesday had been on city's radar as crime hotspot, Denver 7 (Feb. 5, 2025), https://perma.cc/9Q6D-8W3E; Allison Sherry, et al., As ICE Expands its Colorado Efforts, Many Without Criminal Records Are Caught in a Wide Net, CPR (Apr. 7, 2025), https://perma.cc/M2GT-RNBJ (describing ICE practice of arresting "people who were in the wrong place at the wrong time when ICE agents descended on an area to make targeted arrests of accused or convicted criminals also in the country without authorization").

[8] Allison Sherry, et al., As ICE Expands its Colorado Efforts, Many Without Criminal Records Are Caught in a Wide Net, CPR (Apr. 7, 2025), https://perma.cc/M2GT-RNBJ (noting ICE reported taking about 30 people into custody).

[9] Quentin Young, Dozens arrested in Denver-area drug and immigration raid, Colorado Newsline (Jan. 27, 2025), https://perma.cc/AF6V-5DDP (described the "departure from business as usual, that ICE is not just there but picking up every person," regardless of whether they were even accused of a crime, and ICE's apparent "policy . . . of picking up as many people as they can" and to "detain now, ask questions later").

[10] Chris Boyette, Over 100 immigrants arrested in raid on underground Colorado nightclub where active-duty military members worked, feds say, CNN (Apr. 28, 2025), https://perma.cc/G4QP-AH5E.

[11] Nick Miroff and Maria Sacchetti, Trump Officials Issue Quotas to Ramp Up Arrests, The Washington Post (Jan. 26, 2025), https://perma.cc/EJ6X-G2N6; Ted Hesson, ICE's tactics draw criticism as it triples daily arrest target, Reuters (June 10, 2025), https://perma.cc/2TLV-DMV2.

buses to send to the ICE detention facility in Aurora. In addition to the many people swept up in large-scale raids, ICE officers detained others without warrants in individual stops, *see, e.g.*, Ex. E, Dias Decl. ¶ 5-18; Ex. F, Ramirez Decl. ¶ 9-22; Ex. G, J.C.C. Decl. ¶ 7-15; Ex. H, Morales Decl., ¶¶ 5-6, including being pulled over or just because they were riding in the passenger seat of a car driven by someone under ICE suspicion, *see* Ex. C, Jordan Decl., ¶¶ 4-6; Ex. I, Vazquez Decl. ¶¶ 4-8; Ex. J, Highland Decl. ¶¶ 5-9; Ex. K, Herrera Decl. ¶¶ 5-10; Ex. L, Noone Decl. ¶¶ 4-12. Given the scope of ICE's enforcement activity, identification and joinder of just those who have already been unlawfully arrested would be impracticable.

The class also includes a vast number of "unknown, unnamed future members," weighing heavily in favor of certification. *Colo. Cross Disability Coal.*, 765 F.3d at 1215. Colorado is home to an estimated 169,000 undocumented immigrants.[12] Under the Administration's recent demands for even more arrests,[13] ICE's enforcement arm is casting an increasingly wide net in a single-minded pursuit of "numbers, pure numbers. Quantity over quality."[14] Indeed, under current ICE policy and practice, anyone who is

---

[12] Immigrants in Colorado, American Immigration Council (Sept. 30, 2025), https://perma.cc/55XL-4XQ4.

[13] Hamed Aleaziz, Under Pressure From the White House, ICE Seeks New Ways to Ramp Up Arrests, The New York Times (June 13, 2025), https://perma.cc/E3RE-RK7S.

[14] David J. Bier, ICE Is Arresting 1,100 Percent More Noncriminals on the Streets Than in 2017, Cato Institute (June 24, 2025), https://perma.cc/946L-FMJ2 (describing dramatic expansion of noncriminal immigration arrests in 2025 compared to end of President Trump's first term in office); Julia Ingram, ICE Detentions of Non-Criminal Immigrants Spike; About 8% Have Violent Convictions, Analysis of New Data Shows, CBS News (June 30, 2025), https://perma.cc/E5C2-AS6B; Jennie Taer, Trump admin's 3,000 ICE arrests per day quota is taking focus off criminals and 'killing morale': insiders, New York Post (June 17, 2025), https://perma.cc/3B45-57YB/.

"collateral" to a subject of enforcement is a target.[15] The President's "Border Czar," Tom Homan, has stated publicly that the agency's "mandate" is to make collateral arrests to increase its arrest numbers. Contrary to the law, Mr. Homan expressed his view that such collateral arrests are allowed if there is "reasonable suspicion" that someone is in the country illegally.[16] As a result, the pool of unknown potential class members is vast.

The Administration has focused its efforts on what it calls "sanctuary" jurisdictions that have declined to commit their own resources to furthering federal civil immigration enforcement, like Colorado.[17] In the weeks following the new quota directive, daily arrests in Colorado surged by more than 30%.[18] Total ICE arrests in Colorado over the

---

[15] Jose Olivares, et al., Ice arrests of migrants with no criminal history surging under Trump, The Guardian (June 14, 2025), https://perma.cc/D8GH-QA52; *See, e.g.*, David J. Bier, ICE Is Arresting 1,100 Percent More Noncriminals on the Streets Than in 2017, Cato Institute (June 24, 2025), https://perma.cc/946L-FMJ2 (describing dramatic expansion of noncriminal immigration arrests in 2025 compared to end of President Trump's first term in office); Julia Ingram, ICE Detentions of Non-Criminal Immigrants Spike; About 8% Have Violent Convictions, Analysis of New Data Shows, CBS News (June 30, 2025), https://perma.cc/E5C2-AS6B; Hamed Aleaziz, Under Pressure From the White House, ICE Seeks New Ways to Ramp Up Arrests, The New York Times (June 11, 2025) https://perma.cc/J6CY-8C69 (quoting a top Administration official as saying, "I said it from Day 1, if you're in the country illegally, you're not off the table. . . we're opening that aperture up.").

[16] Miriam Waldvogel, Homan claims ICE officers 'don't need probable cause to 'briefly detain' people, The Hill (July 11, 2025), https://perma.cc/66A5-M7FF.

[17] The Source with Kaitlan Collins: Trump DOJ Fires Officials Who Prosecuted Him; Homan on Mass Deportation Effort: "There's No Safe Haven"; Trump Calls DeepSeek A.I. "Positive Development" But Also a "Wake-Up Call" For U.S. Tech Industry (CNN broadcast Jan. 27, 2025), https://perma.cc/4KDM-64SC (quoting Administration warning that that would "see a higher number of collateral arrests" in sanctuary jurisdictions"); X, ICE Denver (@ERODenver) (Feb. 5, 2025 9:40AM), https://perma.cc/9UXU-7W7J.

[18] Seth Klamann, Immigration arrests in Colorado have surged under the Trump administration. Now we know how much, The Denver Post (July 9, 2025), https://perma.cc/7BCV-GCRS.

first half of 2025 have quadrupled since the same period in 2024.[19] The recent appropriation of billions more dollars for enforcement will only further fuel the Administration's mass arrest scheme.[20] ICE has returned to the same locations and is randomly arresting immigrants, including those with certain types of driver's licenses. Ex. A, Altman Decl. ¶¶ 9, 16; Ex. I, Vasquez Decl. ¶¶ 4-7.

For all these reasons, joinder of all those in Colorado whom Defendants have or will arrest without warrants would be impracticable. The sheer breadth of the group at risk makes it sufficiently numerous to merit certification as a class.

### B. Members of the Class Have Common Questions of Law and Fact

The claims asserted by the proposed class include common questions of law and fact that satisfy Rule 23(a)(2). At its core, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 349–50 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). The class claims must "depend upon a common contention . . . capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.  Commonality requires at

---

[19] Sandra Fish, et al., Most people arrested by ICE in Colorado and Wyoming this year did not have a criminal history, The Colorado Sun (July 18, 2025), https://perma.cc/Z2Z7-423D (citing Deportation Data Project's compilation of ICE data on immigration arrests in Colorado); Seth Klamann, Immigration arrests in Colorado have surged under the Trump administration. Now we know how much, The Denver Post (July 9, 2025), https://perma.cc/7BCV-GCRS; Ted Hesson, ICE's tactics draw criticism as it triples daily arrest target, Reuters (June 10, 2025), https://perma.cc/2TLV-DMV2.

[20] Sandra Fish, et al., Most people arrested by ICE in Colorado and Wyoming this year did not have a criminal history, The Colorado Sun (July 18, 2025), https://perma.cc/Z2Z7-423D (citing Deportation Data Project's compilation of ICE data on immigration arrests).

least one issue common to the class. *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999). And "[f]actual differences between class members' claims do not defeat certification where common questions of law exist." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010). "Whether a case should be allowed to proceed as a class action involves intensely practical considerations…Each case must be decided on its own facts, on the basis of practicalities and prudential considerations." *Trevizo*, 455 F.3d at 1163 (internal citations omitted).

Plaintiffs here have identified a "single policy, custom, procedure or alleged administrative deficiency" that "unites the claims of the plaintiffs or the putative class members"—the unlawful warrantless arrest of individuals without the required flight risk assessment—that provides the basis for every class member's injury. *Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*, 2006 WL 1801379, at *9 (D. Colo. June 28, 2006), *aff'd sub nom. Shook,* 543 F.3d 597. In addition to this common injury, numerous questions are common to the proposed class: whether ICE has a pattern or practice of conducting warrantless arrests without probable cause that an individual is likely to escape before a warrant can be obtained; whether that pattern or practice exceeds immigration officers' authority under 8 U.S.C. § 1357(a)(2); and whether that pattern or practice violates 8 C.F.R. § 287.8(c)(2)(ii). Any one of these common issues, standing alone, is enough to satisfy Rule 23(a)(2)'s standard. *J.B.*, 186 F.3d at 1288. And while factual differences may exist among members of the class—for example, the facts that would be weighed in a proper flight risk analysis—such differences are irrelevant where no such assessment happened at all. In any event, where common questions of law unite

the class members' claims, such potential differences pose no bar to certification. *DG*, 594 F.3d at 1195.

Answering any one of these common legal questions will "drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (internal citation omitted). Should the Court agree that Defendants cannot lawfully arrest people without a warrant and without an individualized assessment of flight risk, all class members will benefit from the requested relief, which includes a declaratory judgment and an injunction preventing Defendants from effecting such warrantless arrests. A class action is the appropriate means of addressing these common issues.

### C. The Plaintiffs' Claims Are Typical of Class Members' Claims

Plaintiffs have claims typical of the proposed class. *See* Fed. R. Civ. P. 23(a)(3). The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiffs such that the interests of the class will be fairly and adequately protected in their absence. *Gen. Tel. Co. of Sw.*, 457 U.S. at 157 n.13. "Typicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re HomeAdvisor, Inc. Litig.*, 345 F.R.D. 208, 223 (D. Colo. 2024) (internal citation omitted). The interests and claims of the plaintiffs and the class members need not be identical to satisfy typicality, provided the claims of the lead plaintiff and class members are based on the same legal or remedial theory. *DG*, 594 F.3d at 1198-99 (internal citations omitted).

Typicality is satisfied here for largely the same reasons that commonality is. *See*

*Gen. Tel. Co. of Sw.*, 457 U.S. at 157, n.13 ("The commonality and typicality requirements of Rule 23(a) tend to merge"). Each proposed class member has suffered the same principal injury (unlawful warrantless arrest), based on the same government policy (indiscriminate warrantless arrests without individualized flight risk assessments), which is unlawful as to the entire class because it violates statutory and regulatory constraints. The class thus shares an identical interest in invalidation of Defendants' practice. Any factual differences that might exist here between Plaintiffs and class members do not defeat typicality. *DG*, 594 F.3d at 1195.

### D. Plaintiffs and Plaintiffs' Counsel Will Adequately Protect the Interests of the Proposed Class

Plaintiffs and counsel also fulfill the final requirement that "[t]he representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Tenth Circuit has identified two questions relevant to this inquiry: whether the named plaintiffs and their counsel (i) have any conflicts with other proposed class members; and (ii) will vigorously prosecute the action on behalf of the class. *See Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1187–88 (10th Cir. 2002) (internal citation omitted).

Here, there are no differences that create conflicts between the named Plaintiffs' interests and the class members' interests. Plaintiffs will fairly and adequately protect the interests of the proposed class. Plaintiffs do not seek any unique or additional benefit from this litigation that may make their interests different from or adverse to those of absent class members. Instead, Plaintiffs aim to secure relief that will protect them and the entire class from Defendants' challenged policy and to enjoin Defendants from further

violations. Plaintiffs have no incentive to deviate from this class relief. Nor do Plaintiffs seek financial gain at the cost of absent class members' rights. Plaintiffs share a common interest in ensuring the protection of their rights and will vigorously prosecute this action on behalf of all class members. Ex. F, Ramirez Decl. ¶¶ 41-47; Ex. B, J.S.T. Decl. ¶¶ 28–34; Ex. D, G.R.R. Decl. ¶¶ 38–45; Ex. E, Dias Decl. ¶¶ 41–47.

In addition, proposed class counsel includes experienced attorneys with extensive experience in complex immigration cases and class action litigation. *See* Ex. M, Macdonald Decl.; Ex. N, Meyer Decl.; Ex. O, Kawanabe Decl. Indeed, this Court has previously appointed undersigned attorneys from the ACLU of Colorado as class counsel in class action litigation concerning the rights of noncitizens in this District. *See, e.g.*, *D.B.U. v. Trump*, No. 1:25-cv-01163-CNS, ECF No. 51 (D. Colo. May 6, 2025).

## III.   THE PROPOSED CLASS SATISFIES RULE 23(b)'S REQUIREMENTS

Rule 23 requires that, in addition to satisfying the requirements of Rule 23(a), a putative class must also fall within one of the parts of subsection (b). Plaintiffs here seek class certification under Rule 23(b)(2), which provides that a class action is appropriate when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

As courts in the Tenth Circuit have recognized, "[t]he (b)(2) class action was invented for the purpose of facilitating civil rights suits, and much of its use is in that field today." *Anderson Living Tr. v. ConocoPhillips Co., LLC*, 349 F.R.D. 365, 408 (D.N.M. 2025); William B. Rubenstein, *Newberg on Class Actions* §1:3 (5th ed.) (Rule 23(b)(2) "is

13

typically employed in civil rights and other cases where monetary relief is not the primary remedy. The (b)(2) class action is often referred to as a 'civil rights' or 'injunctive' class suit"). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360 (internal citation omitted).

This case presents the quintessential class Rule 23(b)(2) is meant to embrace. Defendants have acted on grounds that apply generally to the class by subjecting them all to the same unlawful practice—warrantless arrest without the mandated, individualized flight risk inquiry. *DG*, 594 F.3d at 1201. And class members can be remedied in a single injunction without differentiating between class members: an order preventing immigration officers from conducting warrantless arrests without probable cause that an individual is likely to escape before a warrant can be obtained. Indeed, courts have previously certified near-identical classes under Rule 23(b)(2). *See, e.g.*, *United Farm Workers v. Noem*, 785 F.Supp.3d 672, 742-3 (E.D.Cal. 2025) (certifying class of persons who have been or will be arrested in the district by immigration officers without a warrant and without a pre-arrest, individualized assessment of probable cause that the person poses a flight risk); *Castañon Nava v. DHS*, No. 18-cv-3757 (N.D. Ill. Feb. 8, 2022), Dkt. No. 158 (certifying for purposes of settlement regional class of all current and future persons arrested without a warrant for a violation of immigration laws).

Aggregate litigation is especially warranted here because many members of the proposed class are likely to be in detention, lack immigration counsel, and be indigent;

they may also be detained in various facilities across the country because ICE has increased transfers of immigrants detained in Colorado to other states[21] and are therefore unlikely to bring their own individual suits. *See, e.g.*, Ex. H, Morales Decl. ¶ 7. It is far more efficient for this Court to grant injunctive and declaratory relief protecting all the class members than to force individuals to pursue piecemeal litigation.

## IV.   CONCLUSION

Plaintiffs respectfully request that the Court grant class certification under Rule 23(b)(2), appoint the Plaintiffs as Class Representatives, and appoint the undersigned as Class Counsel. Plaintiffs also request that the Court grant provisional certification of the proposed class for the purpose of entering a preliminary injunction in this matter.

---

[21] Taylor Dolvan, What happens when ICE takes away a Colorado family? A teammate disappears. A colleague misses work. Neighbors are gone (Sept. 5, 2025), https://perma.cc/UF5Q-MTHZ.

| | |
|---|---|
| DATED: October 9, 2025 | */s/ Kenzo Kawanabe*<br>Kenzo Kawanabe, Bar No. 28697<br>Sean Grimsley, Bar No. 36422<br>Bianca Miyata, Bar No. 42012<br>Olson Grimsley Kawanabe Hinchcliff & Murray LLC<br>700 17th Street, Suite 1600<br>Denver, CO 80202<br>Telephone: (303) 535-9151<br>kkawanabe@olsongrimsley.com<br>sgrimsley@olsongrimsley.com<br>bmiyata@olsongrimsley.com<br><br>Timothy R. Macdonald, Bar No. 29180<br>Annie Kurtz, Bar No. 51525<br>Emma McLean Riggs, Bar No. 51370<br>Sara Neel, Bar No. 36904<br>Scott Medlock, Bar No. 57210<br>American Civil Liberties Union of Colorado<br>303 E. 17th Avenue, Suite 350<br>Denver, CO 80203<br>Telephone: (303) 777-5482<br>tmacdonald@aclu-co.org<br>akurtz@aclu-co.org<br>emcleanriggs@aclu-co.org<br>sneel@aclu-co.org<br>smedlock@aclu-co.org<br><br>Hans Meyer, Bar No. 37812<br>Meyer Law Office<br>1547 Gaylord Street<br>Denver, CO 80206<br>Telephone: (303) 831-0817<br>hans@themeyerlawoffice.com<br><br>*Attorneys for Plaintiffs* |

16