# EXHIBIT 6

## DECLARATION OF J.S.T.

I, J.S.T., declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge and belief:

1. I am a 36-year-old man born in Mexico. I have lived continuously in the United States for 15 years. I lived at the same address in Aurora, Colorado for the last seven years until I was detained in the Detention Center.

2. I am using my initials instead of my full name so that my family and I are not harassed by people because I am bringing this case, and because I fear persecution if returned to Mexico.

3. I worked for the same employer, a local grocery store, for 9 years. My employer describes me as a responsible and hardworking individual who maintains good and respectful relationships with both coworkers and customers.

4. I am committed to improving my community, including through participation in neighborhood projects and volunteer efforts. For over ten years, I have been part of a Catholic religious study group that meets monthly to study the bible. I volunteer with this group in the larger community, including working to provide free food and clothing donations to people in my community.

5. I regularly participate in a prayer group with my church, offering spiritual and emotional support to fellow members.

6. I have strong family ties. I have helped raise my two nieces, both of whom are U.S. citizens, since they were toddlers. My brother (nieces' father) was deported eight years ago. Since then, I have helped raise these girls including providing monies for rent and expenses, taking them to and from school, and generally assisting with their well-being and education.

7. I am a gay man living with HIV and at heightened risk of persecution or torture if returned to Mexico.

8. On February 5, 2025, I was at the Whispering Pines apartments in Aurora, Colorado where I lived for many years. At around 6:00 a.m. that morning, I left my apartment and was preparing to drive to my job at the grocery store.

9. I saw white, unmarked vans blocking the exit to my apartment parking lot. The vans were positioned in a way that I was unable to leave the parking lot to go to work.

10. I saw many officers in the parking lot wearing military-style vests and armed with what looked to me like assault rifles.

11. An ICE officer walked up to my car and demanded my identification. I handed him my Colorado driver's license, which he took and did not return to me. He asked me if I had problems with immigration or past criminal violations, and I said "no."

12. He ordered me to step out of the car, and I complied. A second ICE officer immediately came up to me and ordered me to turn around and put my hands on the car. He searched me without my consent and took my car keys, billfold, and telephone, which he did not return to me. During this time, the first immigration officer took my license to where the vans were located.

13. Approximately four or five minutes later, the first officer came back and told me that I would have to go with them. He put zip ties on my hands. The officer did not have an arrest warrant for me. He did not ask me any questions about my ties to the community, my employment, how long I had lived at the apartment, or anything else.

14. I asked if I could call my family, and the officer said "no." The ICE officer then placed me in a van in the parking lot.

15. At some point, I asked if I could get my HIV medication from my apartment. The officers eventually allowed me to get my medication and accompanied me to my apartment so that I could retrieve it. I was then taken back to the parking lot and placed in the van again.

16. During this time, I saw immigration officers going door-to-door in my apartment complex and knocking on the doors of many apartments. When people opened the doors, the immigration officers began questioning the people inside. I believe that immigration officers detained at least nine people from my apartment complex that day without warrants.

17. At some point, ICE officers removed me from the van and placed me in the back of a smaller vehicle. There were two ICE officers in the front of the smaller vehicle. They took me to the ICE field office in Centennial, Colorado.

18. I was processed at the Centennial ICE office. ICE officials took my fingerprints, got my biographical information, and asked me questions about prior contacts with border patrol. I saw eight other people from my apartment complex at the Centennial field office.

19. I spent approximately three hours at the Centennial field office. Eventually, an ICE officer chained my hands and feet together and I was put on a bus and taken to the Aurora immigration detention facility in Aurora, Colorado, together with the eight other people from my apartment complex.

20. I believe the other eight people were from Mexico. Based on my many conversations with them after we were detained, I do not think that any of them had prior encounters with immigration officials.

21. I spent 28 days at the GEO detention facility, from February 5, 2025, until March 5, 2025. In the detention center, the food was terrible and in meager portions, leaving us very hungry. The food was often cold and hard to eat, and the milk was often spoiled. Sleeping felt impossible because the lights were always on and guards were constantly walking around pointing their flashlights in our faces, which woke us up constantly. The beds were also made of metal and hard to sleep on. We were given only two uniforms, and they were only washed once a week so they often would not be hygienic.

22. Eventually, I was granted a $25,000 bond by an immigration judge. I was able to secure the bond amount with help from family and friends. I was released from detention on March 5, 2025. However, as part of my release on bond, I must wear an ankle monitor, which I am still wearing. I am required to check in with the ankle monitor providers once a month over online video checks and twice a month with in-home check ins.

23. I am pursuing a case before the immigration court where I am applying for asylum, withholding of removal, and protection under the Convention Against Torture based on my sexual orientation as a homosexual man and the fact that I am HIV positive. I

had never applied for asylum or protection before now because I did not know I was eligible or could apply until recently.

24. Where I come from, homosexuals are targeted for our sexual orientation and discriminated against harshly for being HIV positive as well. I fear I will be beaten and eventually killed. The general community is very hostile towards homosexuals and organized crime groups are known to target and kill us for our sexual orientation as well. These same risks exist and are magnified due to my HIV positive status. People with HIV are attacked and killed too and accused of being homosexuals. These things have happened in the past in my own town where people were beaten severely.

25. As a result of this encounter, arrest, and detention, I have lost almost everything. I lost my apartment and many of my belongings while in detention because I was unable to pay rent during the 28 days I was detained. I now live in a small room in my extended family's house. I am afraid to go out in public.

26. If I had not been taken directly to the Detention Center, I would have used the additional time to notify my family and get my affairs in order including trying to pay my rent, collect my belongings, and try to find an immigration attorney.

27. My nieces are also fearful following my detention. My youngest niece became depressed when I was arrested. She was worried that we would be separated after I had been with her for her entire life. Because I live in a small room in my extended family's house and do not have a lot of space to take care of my nieces, I rarely get to see them even after detention. This situation and distance are extremely hard on them and me.

28. I want to be a named plaintiff in this case. I understand that if the Court grants the motion for class certification, I would represent a large number of people who have been arrested by ICE without a warrant, and who were detained without ICE making any attempt to determine if they were a flight risk. This is exactly what happened to me and many other people I was with during the raid.

29. I understand that this class action is only seeking declaratory relief, and not money damages. I understand that I would not receive any money for participating in this case, but that my lawyers might receive attorneys' fees from the defendants if they win.

30. I understand that, as a class representative, I represent the interests of all class members in this lawsuit and that it is my responsibility to represent the interests of the class as a whole and not just my own personal interests. I am committed to being an adequate class representative because I understand how important these issues are not just for me, but for many other people who ICE is arresting without warrants in Colorado.

31. I am not aware of any reason I could not be an adequate class representative. I am not aware of any conflict of interest between myself and other people like me who were (or will be) arrested by ICE without a warrant.

32. I understand that my duty to be a class representative continues until the Court decides this case is no longer a class action, or the case is over. I understand and accept that any resolution of the lawsuit, such as by settlement or dismissal, is subject to the Court's approval and must be in the interests of the class as a whole.

33. I understand that, by agreeing to become a class representative, I have a duty to take steps to help move the case forward, which I will do with my attorneys. I know that I must attend court if necessary; provide information to my attorneys that they feel is necessary for the case; give them documents I have if it is required; testify at a deposition, hearing, or trial if necessary; and provide my attorneys with my contact information and current whereabouts because it may be necessary for them to contact me on short notice.

34. I understand that I am volunteering to represent many other people who ICE arrested who have similar claims. I believe it is important that people in my situation not be detained after arrest without a warrant and without any analysis of whether they are a flight risk. I will work hard to make sure the class's interests are fairly and adequately protected. I will devote all the time and effort necessary to this lawsuit to help the class members, in addition to myself.

35. This declaration was read back to me in Spanish, a language in which I am fluent.

-6-

I, J.S.T., swear under penalty of perjury that the forgoing declaration is true and correct to the best of my knowledge and recollection.

/s/ JST
J.S.T.
Executed this 29th day of August, 2025