**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-03183-RBJ

REFUGIO RAMIREZ OVANDO, et al.,

      Plaintiffs,

v.

KRISTI NOEM, in her official capacity as Secretary of the U.S. Department of Homeland Security,
TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement, and
GEORGE VALDEZ, in his official capacity as Acting Director of the Denver Field Office of U.S. Immigration and Customs Enforcement,[1]

      Defendants.

---

**STATUS REPORT AS TO THE EVIDENTIARY
HEARING SET FOR MARCH 10, 2026**

---

Pursuant to the Court's Order, ECF No. 69, the parties respectfully submit the following status report as to the evidentiary hearing set for March 10, 2026.

**1. The parties' positions on whether the briefing and evidentiary hearing should address arrests based on a "field warrant."**

<u>Plaintiffs' position</u>:

The Court should allow Plaintiffs to ask questions and put on evidence at the March 10 hearing regarding Defendants' recent efforts to obtain "field warrants" after they have

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), George Valdez, the Acting Director of the Denver Field Office of U.S. Immigration and Customs Enforcement, is automatically substituted as an official-capacity respondent in this matter.

detained an individual in Colorado. Defendants have relied on this classification to try to insulate such arrests from the Court's and Plaintiffs' oversight—first by refusing to produce records to Plaintiffs that would provide a means of monitoring compliance with the order's substantive requirements, and now by asserting the Court should rely on their unilateral representation that the arrests are beyond the scope of the case. Declining even to allow evidence on this issue would provide a blueprint for Defendants to evade this Court's order and the statute. How and when the Court decides to address or resolve the issue of the field warrants should wait for another day, but the Court should not preclude evidence about a practice that Plaintiffs maintain is a violation of the Court's order.

Defendants have taken the position that obtaining a field warrant means that they do not have to comply with 8 U.S.C. § 1357(a)(2) or this Court's order requiring probable cause, pre-arrest, that the person is a flight risk. In *Nava*, the district court found, and the Seventh Circuit agreed, that ICE had been issuing field warrants for "the express purpose of avoiding its obligation under 1357(a)(2) and the Consent Decree." *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.th 1048, 1059 (7th Cir. 2025). The District Court found that the manner in which ICE was issuing the field warrants was unauthorized under ICE's own regulations, 806 F. Supp. 3d at 847–54, while the Seventh Circuit stayed certain remedial effects of that order as going beyond the Consent Decree, 161 F.th at 1054-55.

Here, the Court's preliminary injunction required that Defendants produce the Form I-213 for "a specific individual warrantless arrest" upon Plaintiffs' request. ECF No. 49 at 63. Plaintiffs have requested the I-213s for at least five individuals where the facts known

to Plaintiffs evidence a warrantless arrest, yet Defendants have refused to produce the I-213 because they assert a warrant was obtained after the encounter began, but "before the arrest." Plaintiffs dispute this characterization and are entitled to put on evidence showing that the field warrants are obtained after the arrest.

Defendants are taking the position that they can unilaterally decline to produce an I-213 that may show noncompliance with the Court's order based on their assertion that a particular arrest was pursuant to warrant, even when they admit no warrant existed at the beginning of the encounter. Defendants seek to prevent Plaintiffs from challenging their assertion that the arrest in question was pursuant to warrant.

Plaintiffs have sought from Defendants the necessary documentation regarding these arrests, including the Form I-213s, the alleged administrative warrant and accompanying Notice to Appear, which must accompany an administrative warrant pursuant to ICE's own regulations, and communications between the field agents and the issuing officer, in order to determine <u>when</u> during the encounter the warrant was issued and whether the person was in fact under arrest by that time. Defendants have refused to provide those materials. Plaintiffs' position is therefore that excluding inquiry into these field warrant arrests at the hearing would improperly shield from scrutiny an unknown number of arrests that they believe were warrantless and effected in violation of the Court's order.

Defendants' arguments about why the Court should be prevented from learning about a practice Plaintiffs believe is being used specifically to avoid the requirements of this Court's order, *Nava*, 806 F. Supp. at 852 ("The *expressly* stated purpose of ICE's

policy of issuing I-200s in the field—per ICE's own training materials—is to allow ICE officers to *avoid* making individual flight risk analyses before arresting the collaterals."), are inapposite.

First, Defendants' arguments about class certification are a straw man. The only question at issue is whether, in the upcoming evidentiary hearing about ICE's noncompliance with this Court's order, Plaintiffs should be permitted to ask ICE officials questions about practices of theirs that Plaintiffs have reason to believe were noncompliant with the commands of the preliminary injunction.

Second, Defendants wrongly rely on the Seventh Circuit's stay of the district court's decision on field warrants in *Nava* to suggest that the field warrant practice cannot be a subject of questioning at the hearing in this case. In *Nava*, the Plaintiffs argued, and the district court agreed, that the disputed arrests were warrantless arrests because the manner of ICE's issuance of I-200s in the field—in particular, without a notice to appear— was not authorized by statute or regulation. 806 F. Supp. 3d at 847–54. In other words, the *Nava* district court resolved the field warrant issue by concluding that the issuance of the I-200s was legally invalid. *Id.* That is the decision the Seventh Circuit criticized in granting a stay (a decision on the merits has not yet issued). 161 F.4th at 1058–59.

Here, the question is whether even to allow testimony and argument about the practice—including the basic question of whether the warrants were actually obtained, as Defendants represent, *before* the arrest. And whatever the scope of the consent decree in *Nava*, the question here is certainly within the scope of this case and the Court's preliminary injunction. Contrary to Defendants' assertion, allegations in the Amended

Complaint regarding Defendants' noncompliance did include arrests where Defendants say a warrant issued after the encounter began. ECF No. 59-1 at ¶ 288. Also contrary to Defendants' assertion, the preliminary injunction involved arrests—including the arrests of every named Plaintiff—where ICE obtained a warrant after the initial detention. Indeed, in its order, this Court specifically rejected Defendants' theory that "ICE could simply stop any suspected undocumented person, conduct a warrantless arrest with no probable cause of flight risk, and *then* bring the arrest within the color of law by issuing a warrant." ECF No. 49 at 27-28. Those post-hoc warrants were issued at the field office on the day of the Plaintiffs' arrests; Defendants now issue some post-hoc warrants in the field. But advancing the time of obtaining post-hoc warrants by a few hours does not change that "issuing *post hoc* warrants once plaintiffs had already been unlawfully arrested does nothing to cure the initial statutory violation." ECF No. 49 at 27. The issue of post-arrest warrants has been part of the case since the outset.

This Court can and should allow Plaintiffs to inquire into the facts of these "field warrant" arrests to evaluate Defendant's compliance with the Court's order.

**Defendants' position:** In its Minute Order, the Court directed the parties to discuss, and then address in this status report, the specific issue of "whether they want the briefing and evidentiary hearing to address only the totally warrantless arrests or also the arrests based on a 'field warrant,' i.e., an arrest of an undocumented individual without a finding of probable cause that he or she is a flight risk where no warrant has been issued in advance but the agent obtains an administrative warrant by telephone or otherwise

while the individual is being detained at the scene." ECF No. 69. As set forth below, the evidentiary hearing should not address arrests that involve the factual scenario where a warrant is issued in the field for an arrest. Allowing Plaintiffs to expand the hearing to address such arrests presents numerous problems, as set forth below. It would impermissibly allow Plaintiffs to expand the scope of both their case and the Court's order certifying a provisional class and granting preliminary injunctive relief to the class. And Plaintiffs' pending request for a few I-213s that do *not* involve warrantless arrests does not overcome all those hurdles.[2]

No named Plaintiff was arrested in circumstances that involved a warrant. Neither the original complaint nor the amended complaint include any allegations about such arrests.[3] Plaintiff's complaint and motion for preliminary injunction thus did not challenge

---

[2] Plaintiffs' suggestion that Defendants have not complied with the Court's order in producing I-213s for warrantless arrests is not the issue that the Court directed the parties to address in this status report. Moreover, it is incorrect. As the Court is aware, its preliminary injunction did not order Defendants to provide, on request, *any* I-213 for any arrest; the Court limited that directive to arrests that were "warrantless." ECF No. 49 at 63. Defendants have complied with that requirement. Plaintiffs have now requested I-213s for certain individuals where a warrant *was* obtained. Plaintiffs have taken the position that for certain arrests the facts "known to Plaintiffs suggest the arrest was warrantless." But at this time, Plaintiffs have not presented Defendants with the facts that they represent are known to them to show why such arrests—where warrants were used—should be viewed as warrantless. Defendants submit that Plaintiffs should first provide Defendants the information they know about these arrests to show why Plaintiffs believe these arrests are warrantless. In any event, Plaintiffs have not shown that this ongoing discussion about certain arrests warrants a wholesale, unjustified expansion of the scope of the imminent March 10 hearing, for the reasons set forth below.

[3] Defendants have explained to the Court their view that the amended complaint should not be treated as the operative complaint due to the pending appeal. *See* ECF No. 64 at 2; ECF No. 65 at 2–3.

arrests made pursuant to a warrant. *See, e.g.*, ECF No. 1 ¶ 1 (alleging that "ICE agents are arresting Latine people without warrants, without probable cause, and without assessing legal status and flight risk as required by law"); ECF No. 47 at 5:10-12 (Plaintiffs' counsel stating in opening statement that "Plaintiffs seek a preliminary injunction to stop the Government from continuing arrests without warrants in violation of 8 USC Section 1357(a)(2)").

The Court also heard no evidence at the preliminary injunction hearing about arrests that involved a warrant. And the Court's order granting provisional class certification and a preliminary injunction thus did not reach arrests involving a warrant. ECF No. 49 ("This case arises out of [ICE's] alleged practice in Colorado of arresting individuals suspected of being unlawfully present without a warrant and without making the [required] individualized flight-risk determination").

The Court's class certification analysis, too, did not address whether a class containing individuals arrested in circumstances that *did* involve a warrant could be certified. And the provisional class does not include individuals arrested in circumstances that involve a warrant. *See* ECF No. 49 at 59 (defining class to include "persons . . . who have been arrested or will be arrested in this District by immigration officers *without a warrant* and without a pre-arrest, individualized assessment of probable cause that the person poses a flight risk"). An arrest effectuated pursuant to a warrant is not a "warrantless" arrest. The preliminary injunction thus does not extend to those arrests. *See id.* at 61 ("[D]efendants shall not effect *warrantless* arrests in this District unless . . . ." (emphasis added)); *id.* at 63 ("[A]s soon as practicable after a *warrantless* arrest, the

arresting officer shall document in writing the facts and circumstances surrounding that arrest . . . ." (emphasis added)).

The evidentiary hearing—which Plaintiffs sought to focus on purported non-compliance with the preliminary injunction's requirements—thus should not extend to eliciting evidence about arrests that involve warrants.

Plaintiffs now seek to expand the hearing to also address a different factual circumstance than Plaintiffs have challenged in this case to date. Plaintiffs' theory as to the arrests that involve warrants issued in the field appears to be that as a legal and factual matter, some arrested individuals may have been, in Plaintiffs' view, *de facto* under arrest before they were formally placed under arrest pursuant to a warrant that an immigration officer obtained after the encounter began. But as noted, neither the original nor amended complaints include any allegations about the circumstances of any such arrests. Similarly, neither Plaintiffs' counsel's February 12, 2026, email to the Court about setting a status conference nor Plaintiffs' February 17, 2026, agenda for the status conference provided any specific facts about any such arrests.[4]

The challenge to this circumstance is also a new theory, with new legal implications. The purported "final agency action" that Plaintiffs challenge in this case is not a practice of functionally placing individuals under arrest in the moments before they

---

[4] In their status conference agenda, Plaintiffs asserted that counsel for Defendants has confirmed that immigration officers procure warrants "after they have detained so-called 'collaterals' in Colorado." ECF No. 66 at 3 (emphasis omitted). Counsel for Defendants dispute this characterization. Counsel for Defendants have stated to counsel for Plaintiffs only that in some circumstances, immigration officers have obtained warrants after an encounter began, but before an arrest occurred.

are formally arrested pursuant to a warrant, but rather "a policy, pattern, and/or practice of wholly disregarding individualized flight risk when effecting warrantless arrests." ECF No. 49 at 49 (characterizing the nature of the challenged final agency action). A claim about field-issued I-200 arrests would present different legal and factual questions than the alleged policy, pattern, and/or practice here.

In addition, this theory would impermissibly expand and further muddle the class as currently defined. The Court did not hear evidence about, or certify, a class that includes individuals arrested under these circumstances. There is no dispute that the named Plaintiffs were warrantlessly arrested. The Court could not have determined that individuals arrested pursuant to a warrant met the numerosity requirement because Plaintiffs made no showing about them. And doing so would present an insurmountable problem with ascertainability because, as Plaintiffs admit, the circumstances of *each* arrest would need to be evaluated to determine if the individual was a class member at all.[5] *See Evans v. Brigham Young Univ.*, No. 22-4050, 2023 WL 3262012, at *5–7 (10th Cir. May 5, 2023) (class certification may be denied where "the actual process of ascertaining class membership will necessitate delving into individualized or subjective determinations"). Nor would the class have passed muster under Rule 23(b)(2), which (as the Court has recognized) "demands a certain cohesiveness among class members with respect to their injuries." ECF No. 49 at 35 (quoting *Shook v. Bd. of Cnty. Comm'rs*, 543

---

[5] Although Defendants respectfully submit that the class the Court provisionally certified also suffers from this problem, it is at least possible to objectively determine that there was not a warrant at all for a particular arrest.

F.3d 597, 604 (10th Cir. 2008)). Cohesiveness would not exist within this group of arrestees, where the individual circumstances of each arrest must be evaluated to know if a de facto arrest occurred before a formal arrest, let alone exist between such arrestees and those who are the actual subjects of Plaintiffs' complaint—those arrested "without a warrant or probable cause determination" *at all*. *See id.*

Expanding the case to include this theory would also raise new legal hurdles for this case. The *Castanon-Nava* litigation demonstrates that the issue of field-issued arrest warrants raises distinct legal issues beyond the scope of the preliminary injunction (and, indeed, this case). In *Castanon-Nava*, the Seventh Circuit recognized that arrests that involve a warrant are different from arrests where there is no warrant at all, and that the distinction has important legal consequences. There, in the context of a motion to enforce the consent decree, the district court treated some arrests that involved field-issued I-200s as within the scope of the consent decree: it concluded that the warrants were invalid, and then treated those arrests as warrantless. *See Castanon-Nava v. DHS*, 806 F. Supp. 3d 823, 847–54 (N.D. Ill. 2025). In staying the district court's order as to those arrests involving a field-issued I-200, however, the Seventh Circuit "read the Consent Decree to cover *only* those individuals whose arrests are effectuated *in the absence of any warrant* (I-200 or otherwise)." *Castanon-Nava v. DHS*, 161 F.4th 1048, 1058 (7th Cir. 2025) (emphasis added).

The distinction matters because a provision of the Immigration & Nationality Act, 8 U.S.C. § 1252(f)(1), forbids lower courts from ordering class-wide injunctive relief as to the operation of certain provisions of the INA, including the provision that deals with

arrests that involve a warrant, 8 U.S.C. § 1226. *See Castanon-Nava*, 161 F.4th at 1058 (finding that the government was "likely to succeed on [its] argument that the district court ran afoul of § 1252(f)(1) when it rejected ICE's use of field-issued I-200 warrants and re-classified the arrests made pursuant to these warrants as warrantless ones"). Section 1252(f)(1)'s prohibition shows that arrests that involve a warrant are distinct from the warrantless (i.e., no warrant all) arrests that this case is about, and that individuals arrested in circumstances that involve a warrant are not part of the provisionally certified class. It follows that an evidentiary hearing about compliance with the preliminary injunction should not extend to evidence about arrests that do not involve the class members here.

Finally, Tenth Circuit precedent indicates that the Court should not allow an evidentiary inquiry into an issue not raised in Plaintiffs' complaint. The Tenth Circuit has articulated the basic principle that "the 'doors of discovery' do not typically open before a plaintiff files a well-pleaded complaint showing entitlement to relief." *See Workman v. United States Postal Serv.*, 127 F.4th 237, 240 (10th Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). But that is essentially what Plaintiffs seek to do here: obtain information about an unasserted claim in the guise of taking evidence about alleged "non-compliance" with a preliminary injunction. The Court should not permit Plaintiffs to expand the scope of their claim in this fashion.

For all the reasons described above, the Court should confine the hearing to evidence about arrests that do not involve a warrant at all and to Defendants' compliance with the preliminary injunction when it comes to those arrests.

**2. Whether the parties have been able to eliminate the need for the hearing or have otherwise narrowed the issues for the hearing**

The parties have not otherwise narrowed the issues for a hearing or been able to reach an agreement that would eliminate the need for the hearing.

<u>Plaintiffs' position</u>:

Plaintiffs have requested that Defendants provide four categories of documents to help provide a more complete picture of their compliance to date and to help evaluate whether a hearing is necessary (and its scope). This includes: (1) all the I-213s for warrantless arrests in the district since the entry of the preliminary injunction, rather than the one-third (33%) that Plaintiffs have received to date; (2) training materials that Defendants have used in this District to ensure compliance with the Court's PI; (3) the I-213s for asserted "field warrant arrests"—arrests where no warrant existed before the start of the encounter with law enforcement—along with the administrative warrants and NTAs for those arrests, and (4) communications between the field agents and the warrant-issuing officer during asserted "field warrant arrests." Defendants have declined to provide any of the documentation. In addition, Plaintiffs invited Defendants to provide a proposal that would include *some* of the documentation or relief Plaintiffs have been requesting for three weeks, and Defendants have declined to do so. Plaintiffs' position thus remains that an evidentiary hearing is necessary in this case to understand the nature and scope of Defendants' noncompliance.

**Defendants' position:** Plaintiffs sought the evidentiary hearing on a short time frame, without seeking time for discovery. Ordering discovery before the hearing is impractical and would make it impossible to conduct the hearing on the tight time frame Plaintiffs sought. During a conferral after last week's status conference, Plaintiffs orally requested many documents that generally track the relief they have asserted they may seek after the evidentiary hearing. Plaintiffs did not indicate that if Defendants produced such documents, Plaintiffs would agree that the hearing is not necessary. Defendants do not understand the Court to have authorized any discovery before the hearing and, under the tight time frame set by the Court at plaintiffs' request, would object to such discovery to the extent that is what Plaintiffs may be seeking here before the hearing that is set for less than two weeks from today. Defendants submit that a better approach under these circumstances is for the parties to exchange exhibit lists a few days before the hearing, which will enable Plaintiffs to review the documents on which Defendants will be relying at the hearing, and thus will prevent any unfair surprise by either side.

### 3. Stipulations regarding warrantless arrests and "field warrants"

<u>Plaintiffs' position</u>:

Plaintiffs have asked Defendants to stipulate that the I-213s that Defendants have produced pursuant to the Court's November 25, 2025 order to produce I-213s for warrantless arrests were, in fact, warrantless arrests. The proposed stipulation also asked Defendants to agree that the I-213s they have declined to produce based on their representation that the arrests were pursuant to warrants obtained after the encounter

began were, in fact, pursuant to warrant, and to stipulate that the warrants were obtained after the encounter began. The stipulation also addresses a third category of seven I-213s that Defendants produced under the court's order, but which Defendants later represented "may" have been pursuant to warrant, and asks them to stipulate that those arrests were in fact pursuant to warrant.

In other words, Defendants have made representations about whether a number of I-213s the parties have conferred about were warrantless or not, and the proposed stipulation asks them to agree that those representations were accurate and factual in order to focus the matters subject to dispute at the hearing. Defendants have not yet provided a position on the proposed stipulation.

**Defendants' position:** On February 23, 2026, Plaintiffs' counsel sent Defendants' counsel a "Stipulation Regarding Warrantless Arrests." The stipulation identifies 41 individuals alleged to have been arrested by Defendants and appears to address both warrantless arrests and arrests that involved a field-issued I-200. Defendants are still evaluating Plaintiffs' stipulation and do not yet have a position on the stipulation at this time.

### 4. The need for trial subpoenas & writs of habeas corpus ad testificandum

Plaintiffs' position:

Plaintiffs have identified 6 ICE agents as may-call witnesses at the hearing, in addition to Assistant Field Director Gregory Davies. Because Defendants have declined to produce these witnesses, Plaintiffs will issue trial subpoenas. Plaintiffs have provided

Defendants the topics for the officers' examination per *Touhy*. Defendants have asked Plaintiffs to resend those topics in a particular manner, which Plaintiffs agree to do.

Plaintiffs also anticipate calling individuals who have been subjected to warrantless arrests since the court's order, including individuals currently in detention at the Aurora Contract Detention Facility and anticipate seeking from the Court a writ of habeas corpus ad testificandum, pursuant to 28 U.S.C. 2241(c)(5), to facilitate their presence at the hearing. These witnesses' testimony would provide the Court the first-hand account of individuals who have been wrongfully arrested since the entry of the preliminary injunction.

**Defendants' position:** As to trial subpoenas, Defendants would request that Plaintiffs obtain subpoenas for any government witnesses they intend to call at the evidentiary hearing, which will allow Defendants to initiate and complete the "*Touhy*" authorization process required by federal law.

As to writs of habeas corpus ad testificandum, Defendants do not yet have a position because, as noted *infra*, Plaintiffs have not yet disclosed the noncitizen detainees who would be the subject of such writs. Once Plaintiffs have identified the noncitizen detainees they intend to call as witnesses, Defendants can inform Plaintiffs of their position as to the need for any writs of habeas corpus ad testificandum.

**5. Remote appearances at the hearing**

Plaintiffs' position:

Defendants have not yet identified whether any of the government witnesses have reason to seek to appear remotely, so Plaintiffs have not formulated their position on any such potential request. For the witnesses who have been subjected to arrest that Plaintiffs intend to call, they prefer to have those witnesses in the courtroom to facilitate communication and interpretation.

**Defendants' position:** The parties agree that their counsel intend to attend the evidentiary hearing in person.

As to witness attendance at the hearing, Defendants are still evaluating their position. Plaintiffs have stated that they intend to call certain of Defendants' employees and may also call noncitizen detainees as witnesses.

As to Defendants' employees, it is possible that some of those employees will need to testify remotely, assuming that they are otherwise available. Plaintiffs, though, must first comply with Defendants' *Touhy* regulations for approval of those employees' testimony. On February 24, 2026, Defendants requested that Plaintiffs comply with Defendants' *Touhy* regulations. Plaintiffs have not yet complied with those regulations. In the meantime, Defendants are in the process of confirming the availability of the employees identified as witnesses by Plaintiffs.

As to noncitizen detainees, Defendants do not have a position at this time because Plaintiffs have not yet disclosed any detainees as witnesses they intend to call. Once Plaintiffs have identified detainees they intend to call as witnesses, Defendants can inform Plaintiffs of their position. However, Defendants believe that the burden of bringing them to the courthouse (especially on short notice) likely outweighs the interest in having them

testify in court, particularly given that the Court has indicated that it will be appearing remotely for the hearing.

**6.  Agreement on admission of and redactions to I-213s for public access**

Plaintiffs' position:

Plaintiffs have provided Defendants with proposed redactions to the Form I-213s, eliminating personal identifying information about persons other than governmental officers who are named in the forms. Defendants have not provided their position on Plaintiffs' proposed redactions. Plaintiffs' position is that the redacted, government-produced Form I-213s should be admissible at the hearing and fully accessible to the public.

**Defendants' position:** Plaintiffs have asked that Defendants review approximately 95 pages of redactions to certain I-213s. Defendants are still reviewing those redactions and should be able to provide Plaintiffs their position on those redactions in the coming days. Defendants are likely to agree to the admission of those I-213s, subject to appropriate confidentiality protections, but at this point reserve the right to object to their admission. Defendants may seek to restrict public electronic access to redacted I-213s, as was done for the I-213s for the named plaintiffs before the preliminary injunction hearing.

Dated: February 25, 2026.

PETER MCNEILLY
United States Attorney

 s/ _____
**Brad Leneis**
**Logan Brown**
**Nick Deuschle**
Assistant United States Attorneys
1801 California Street, Suite 1600
Denver, Colorado  80202
Telephone: (303) 454-0100
FAX: (303) 454-0411
brad.leneis2@usdoj.gov
logan.brown@usdoj.gov
nick.deuschle@usdoj.gov

*Attorneys for Defendants*


 s/ _____
Kenzo Kawanabe, Bar No. 28697
Sean Grimsley, Bar No. 36422
Bianca Miyata, Bar No. 42012
Olson Grimsley Kawanabe Hinchcliff &
Murray LLC
700 17th Street, Suite 1600
Denver, CO 80202
Telephone: (303) 535-9151
kkawanabe@olsongrimsley.com
sgrimsley@olsongrimsley.com
bmiyata@olsongrimsley.com

Timothy R. Macdonald, Bar No. 29180
Annie Kurtz, Bar No. 51525
Emma McLean Riggs, Bar No. 51370
Sara Neel, Bar No. 36904
Scott Medlock, Bar No. 57210
American Civil Liberties Union of
Colorado
303 E. 17th Avenue, Suite 350
Denver, CO 80203
Telephone: (303) 777-5482
tmacdonald@aclu-co.org

akurtz@aclu-co.org
emcleanriggs@aclu-co.org
sneel@aclu-co.org
smedlock@aclu-co.org

Hans Meyer, Bar No. 37812
Meyer Law Office
1547 Gaylord Street
Denver, CO 80206
Telephone: (303) 831-0817
hans@themeyerlawoffice.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on February 25, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will cause notice to be delivered electronically to all counsel of record.

*s/ Brad Leneis*
Brad Leneis
Assistant U.S. Attorney