**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-03183-RBJ

REFUGIO RAMIREZ OVANDO, CAROLINE DIAS GONCALVES, J.S.T., and G.R.R., and all those similarly situated, and the EAST COLFAX COMMUNITY COLLECTIVE,

       Plaintiffs,

   v.

KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security, TODD M. LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement, and GEORGE VALDEZ, in his official capacity as Director of the Denver Field Office of the U.S. Immigration and Customs Enforcement,

       Defendants.

---

**MOTION TO ENFORCE PRELIMINARY INJUNCTION AND BRIEF IN SUPPORT**

---

       Since the entry of this Court's November 25, 2025, preliminary injunction (ECF 49) ("PI"), Defendants have continued their policy and practice of effecting unlawful warrantless arrests in Colorado, now in violation of both pre-existing federal law and the terms of this Court's order. Plaintiffs urgently move to enforce the PI. Each unlawful arrest is an irreversible harm. With each violation, Defendants make accountability for their actions more elusive. Once Defendants have carried out an unlawful arrest, the human toll of their misconduct becomes exceedingly difficult to document, let alone remedy, because most of the people ICE unlawfully arrests have no access to counsel and are either deported or accept voluntary departure rather than face the prospect of indefinite detention in an overcrowded facility with miserable conditions that judges of this Court have called "abhorrent." *Arostegui-Maldonado v. Baltazar*, 794 F.Supp.3d 926, 940 (D.

Colo. Aug. 8, 2025). The Court's intervention is necessary to prevent continued violations of class members' rights and the irreparable harms being wrought against them, their families, and communities across our state.

**I.      Defendants continue to defy federal law and this Court's order.**

On November 25, 2025, following a two-day evidentiary hearing, this Court found that Defendants had engaged in widespread warrantless immigration arrests in Colorado in violation of federal law and entered a preliminary injunction.

In the order, this Court, among other things, (1) enjoined Defendants from further violating the individualized-assessment-of-flight-risk requirements enshrined in 8 U.S.C. § 1357 and 8 U.S.C. § 287.8(C)(2)(ii), and (2) required Defendants to document the required probable cause findings in the Form I-213s to ensure warrantless arrests would comply with the law going forward. ECF 49 at 62. The order's documentation requirements are substantially the same as those in ICE's prior Broadcast Statements of Policy. ECF 49 at 60-62. Indeed, at the outset of this case, Defendants represented to this Court that the injunction Plaintiffs sought was unnecessary because immigration officers were already required and trained to act in accordance with the requested relief. ECF 26 at 3.

Yet, as reflected in the Form I-213s that Plaintiffs have received only as a result of this Court's order, ECF 49 at 63, immigration officers in Colorado continue to flout the legal requirements that Defendants claimed were well known to them in October, and indeed years before.

The Court's order directed Defendants to provide Plaintiffs' counsel (1) the Form I-

213 for any specified warrantless arrest upon Plaintiffs' request[1] and (2) on a regular basis going forward, the Form I-213s for a randomly selected subset of all warrantless arrests conducted by immigration officers in the District. ECF 49 at 63. Because Plaintiffs believed that a relatively small sample size could show whether there was compliance with the Court's order, they agreed to accept a randomly selected one-third (1/3) of the Form I-213s for warrantless arrests effected in the prior month (and Defendants agreed to produce those on the 10th of the following month). To meet their obligations under the order, Defendants have provided two such batches of forms: one for the period from November 25, 2025, through December 31, 2025, and one for the month of January 2026.

Not a single arrest reflected in the Form I-213s produced by Defendants since the PI has complied with the Court's order. First, the Form I-213s universally fail to adhere to this Court's documentation requirements, which were imposed to ensure that warrantless immigration arrests are not effected in Colorado without the flight risk assessment required by federal law. Second, the Form I-213s confirm that Defendants continue to effect warrantless arrests <u>without</u> probable cause of the person's risk of flight. Within these documents are the names and faces of Coloradans who were well established, contributing members of their communities. They were wrongfully arrested by Defendants and now either languish in detention or have already been removed from the United States.

Plaintiffs seek immediate relief to enforce the Court's preliminary injunction and

---

[1] The parties agreed Defendants would produce requested forms within 4 business days.

preserve the rights it sought to protect. Plaintiffs respectfully request that the Court enter an ordering finding that Defendants violated the PI across the state since November 25, 2025, and requiring Defendants to provide to Plaintiffs additional documentation of arrests conducted in the district, officer training on the requirements of the preliminary injunction, and Plaintiffs' costs and fees, as a sanction for their continued violation of the Court's order.

### A. Defendants violate the Court's order to document probable cause and other information in the Form I-213s.

The PI ordered that the arresting officer "shall document" in the narrative section of a Form I-213, among other things, that: (i) the person was arrested without a warrant, (ii) the person's ties to the community, if known at the time of the arrest, including family, home, or employment, and (iii) the specific, particularized facts supporting the conclusion that the person was likely to escape before a warrant could be obtained. ECF 49 at 62. The order also specified that "[i]nformation learned post-arrest relevant to a custody determination should be documented separately from the information relevant to the likelihood of escape known at the time of the warrantless arrest." *Id*.

In January, Defendants produced 23 Form I-213s for warrantless arrests in Colorado: 20 forms representing a random one-third of warrantless arrests from November 25, 2025, to December 31, 2025 (Ex. A), and 3 specifically requested by Plaintiffs (Ex. B).[2] In February, Defendants produced 6 forms: 5 in its monthly production

---

[2] Defendants represented that there were 58 Form I-213s for arrests in Colorado from Nov. 25 to Dec. 31, 2025, that "do not contain facts indicating a warrant may have been issued." Ex. A at P202.001.

(Ex. C) and 1 per Plaintiffs' request (Ex. D). Not a single one states that the person was arrested without a warrant. Not a single one documents officers' inquiry into community ties before the arrest. At least 27 of the 29 arrest reports do not mention anything about potential flight risk, let alone the specific, particularized facts supporting a conclusion that the person was likely to escape before a warrant could be obtained. In addition to these near-uniform violations of the preliminary injunction, many of the I-213s also fail to comply with other aspects of the order, including not making any distinction between information discerned prior to and after arrest, officers not properly identifying themselves, and not documenting the specific, particularized facts supporting the conclusion that the person was present in violation of U.S. immigration law. The forms also appear to reflect continued racial profiling of people ICE seeks to detain.

**B.    Defendants violate the Court's order to assess flight risk.**

In addition to violating the Court's order to document the particular facts supporting probable cause, the I-213s demonstrate that Defendants continue to effect warrantless arrests throughout Colorado <u>without</u> the required flight risk assessment. The following narratives—taken directly from Form I-213s that Defendants produced to Plaintiffs pursuant to the Court's order–are characteristic of the arrests since the PI:

> [Arrestee] was questioned to her name and status in the United States. [Arrestee] responded that their name was [the arrestee's name] and was not currently in possession of any documentation that would allow her to be in or remain in the United States legally at this time. [Arrestee] was informed that she was under arrest for immigration violations and was taken into custody without incident.

Ex. A at P202.033.

> [Arrestees] were asked for Identification. Immigration and criminal history queries were run and found them to be in violation of Immigration laws. Officers placed

Subjects under arrest.

Ex. A at P202.029.

> [Officer] questioned the SUBJECT as to his identity and the SUBJECT confirmed that his name was [arrestee's name]. The SUBJECT was taken into custody without incident and transported to the ICE Denver Field Office for further processing.

Ex. A at P202.049

> The Subject was not in possession of valid immigration documents that would allow the Subject to be in or remain in the United States legally. The Subject was placed under arrest . . .

Ex. A at P202.057.

> [Arrestees] admitted to not having status to be legally in the United States and were also taken into ICE custody . . .

Ex. C at P207.013.

> [Arrestees] admitted to being in the U.S. illegally with no documents. Officers ordered [arrestees] out of the vehicle . . . and informed them that they are under arrest for immigration violations. Officers applied handcuffs and [arrestees] were transported to the Denver Field Office for processing.

Ex. C at P207.016.

These descriptions track the accounts of every person subjected to a warrantless arrest since the entry of the PI that Plaintiffs' counsel have been able to interview. They universally report being encountered by ICE, being asked at most for ID or about their status, and then being immediately arrested. Ex. F, Decl. of R.J.R.P. (named in Ex. A at P202.056-058), ¶¶ 5-13; Ex. G, Decl. of R.C.P. (named in Ex. C at P207.015-017), ¶¶ 3-10; Ex. H, Decl. of A.G.R. (named in Ex. A at P202.029-031), ¶¶ 3-19; Ex. I, Decl. of K. Hayes, ¶¶ 17-21 (interview with C.E.P.C., named in Ex. C at P207.018-020); ¶¶ 33-37 (interview with F.L.Z., named in Ex. C at P207.006-008).

Moreover, many of the Form I-213s on their face indicate the arrestees were <u>not</u> flight risks. The people ICE unlawfully arrested include people who have been in the United States for more than 20 years, *e.g.*, Ex. B at P204.015-017; people taken from their minor U.S. citizen children, *e.g.*, Ex. A at P202.059-061; people with long employment histories, *e.g.*, Ex. A at P202.014-016; asylum seekers previously complying with the legal process, *e.g.*, Ex. A at P202.067-069; people with no criminal history, *e.g.*, Ex. B at P204.011-13; and even people detained when they showed up for a scheduled check-in at an ICE office, *e.g.*, Ex. A at P202.032-034. And the arrestees Plaintiffs' counsel have been able to interview all have additional circumstances that weigh against any flight risk and are not reflected at all in the forms ICE produced. Ex. F, Decl. of R.J.R.P. (named in Ex. A at P202.056-058) (asylum seeker with no criminal history, work authorization, two jobs, and family); Ex. H, Decl. of A.G.R. (named in Ex. A at P202.029-031) (asylum seeker with steady job and prior probation compliance); Ex. G, Decl. of R.C.P. (named in Ex. C at P207.015-017) (steady job, apartment, and no criminal history); Ex. I, Decl. of K. Hayes, ¶¶ 11-28 (interview with C.E.P.C., named in Ex. C at P207.018-020) (asylum seeker with work authorization, steady job, compliance with check-ins, and no criminal history); ¶¶ 29-43 (interview with F.L.Z., named in Ex. C at P207.006-008) (steady housing, partner, compliance with check-ins).

## II.    Further relief is necessary to enforce the preliminary injunction.

"Federal courts are not reduced to issuing injunctions against [government] officers and hoping for compliance." *Hutto v. Finney*, 437 U.S. 678, 690 (1978). On the contrary, "the power of a court to make an order carries with it the equal power to punish for a

disobedience of that order, and the inquiry as to the question of disobedience has been, from time immemorial, the special function of the court." *In re Debs*, 158 U.S. 564, 594 (1895). The power of a court to enforce its judgments is what makes the judicial power "[a]dequate to the purposes for which it was conferred by the Constitution." *Peacock v. Thomas,* 516 U.S. 349, 356 (1996). Thus, "[o]nce issued, an injunction may be enforced." *Hutto*, 437 U.S. at 690. It may also be modified in adaptation to changed conditions— particularly where, as here, the injunction involves "supervision of changing conduct" and Defendants have turned its existing terms "into an instrument of wrong." *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932). The court retains these powers even when the government has noticed an interlocutory appeal of the injunction. Fed. R. Civ. P. 62(c)(1), (d); Charles Alan Wright & Arthur A. Miller, 11A Federal Practice and Procedure § 2962 (3d ed.). And a federal court has at its disposal an array of means to enforce its orders. *Degen v. United States*, 517 U.S. 820, 827 (1996).

Plaintiffs seek at least the following relief in order to ensure Defendants' compliance with federal law and the Court's order[3]:

1. An order requiring Defendants to ensure all officers authorized to execute immigration arrests in this District are trained on the requirements of the PI and the order[4];

2. An order that any officer authorized to make warrantless arrests in this District after entry of this order shall not be permitted to make warrantless arrests until being trained

---

[3] Plaintiffs reserve the right to amend or supplement these requests based on facts elucidated at the upcoming evidentiary hearing regarding the nature, scope, and reasons for Defendants' noncompliance.

[4] This request mirrors item #5 in Plaintiffs' prior proposed order on the PI (ECF 13-1), and request (3) mirrors item #6 (ECF 13-1), both of which the Court stated Plaintiffs could renew "should compliance with the Order prove elusive." ECF 49 at 63.

on the requirements of the PI and this order;

3. An order requiring Defendants, within thirty (30) days of the order, and on the 10th day of the month thereafter until all immigration officers who are charged with making warrantless arrests in this District have been so trained, to serve to Plaintiffs' counsel documentation showing that they are completing training of immigration officers who have performed, or will perform, operations in this District, on the requirements of the PI and this order;

4. An order requiring Defendants to provide class counsel, on the 10th day of each month, certification of who has been trained on the warrantless arrest requirements in Colorado and when;

5. An order requiring Defendants to provide class counsel, within three (3) business days of the order, with the training materials and communications ICE has used to ensure compliance with the PI and the law to date;

6. An order requiring Defendants to provide class counsel, within thirty (30) days of the order, and on the 10th day of each month thereafter, any new training materials and communications that ICE plans to use going forward to ensure compliance with the Court's order and the law or a certification that there is no new training materials that ICE plans to use in the next month;

7. An order requiring Defendants to provide class counsel, within 30 days of the order, all of the Form I-213s and the associated administrative warrants and notices to appear, if any exist, for the following arrests that have happened in Colorado since the PI, in separately identified productions: (a) arrests that were warrantless, (b) arrests in which the government claims they obtained a warrant after the encounter began; and (c) arrests for which Plaintiffs have requested documentation based on a good-faith basis to believe the arrest was not a targeted arrest. For arrests in categories (a) and (b), Defendants should also produce those documents on the 10th of the following month on a going forward basis; for arrests in category (c), Defendants must produce those documents to Plaintiffs' counsel within 4 business days of a request.

8. An order requiring Defendants to provide class counsel within thirty (30) days of the order, and on the 10th day of each month thereafter on a going forward basis, a master list of all foreign nationals, with their A# and country of origin, who were either subject to a warrantless arrest or where the government claims they obtained the warrant after the encounter began, for all arrests that have happened in Colorado since the PI.

9. An order requiring Defendants to document in Form I-213s the process regarding when and how administrative warrants have been obtained after an encounter with an individual for whom there was no warrant at the time of the initial encounter;

10. An order requiring Defendants to document in Form I-213s, for vehicle stops, the

locations where officers encountered the vehicle, the basis for believing that the vehicle stop was lawful, and where they stopped it;

11. A finding that defendants violated the Court's order on a widespread basis across the state since Nov. 25, 2025; and

12. Fees/costs associated with enforcing the court's PI order.

### A. The requested relief is necessary to address Defendants' violations.

The requests for materials related to officer training are necessary to understand why there has been widespread noncompliance with the PI and to ensure that such noncompliance does not continue moving forward. In addition, while Plaintiffs initially believed reviewing a subset of Form I-213s would be sufficient to monitor compliance, the evidence of Defendants' widespread noncompliance necessitates a comprehensive review of their warrantless arrest reports. This request is consistent with the relief ordered in *Escobar-Molina v. U.S. Dep't of Homeland Sec.*, --- F. Supp. 3d ----, 2025 WL 3465518, at *39 (D.D.C. Dec. 2, 2025), and the consent decree in *Nava*, 806 F. Supp. 3d at 838.

Consistent with the additional relief granted in *Nava*, Plaintiffs also request the Form I-213 and any administrative warrant and notice to appear for arrests in the district where the government admits no warrant had been obtained before the encounter and, upon Plaintiffs' request, where Plaintiffs have a good-faith basis to believe the arrest was not a targeted arrest. In *Nava,* the Court recently ordered the government to produce to plaintiffs' counsel "a master list of all foreign nationals who were . . . either subject to a warrantless arrest or were subject to arrest under circumstances *where there is a genuine dispute about whether their arrest was subject to an I-200 warrant or was warrantless*." Order at 2, *Castanon-Nava*, No. 1:18-cv-03757 (N.D. Ill. Feb. 17, 2026), ECF 301

(emphasis added). The court further ordered the government to produce the arrest records (including the administrative warrants) for particular individuals whom the government asserted were arrested on "field" warrants. *Id*.

Defendants have refused to provide Plaintiffs' counsel with at least 5 different I-213s for arrests they say were pursuant to "field warrants," even though they have acknowledged that no warrant existed when the encounter began.[5] Plaintiffs were able to interview one of those individuals, C.L.P. *See* Ex. I, Decl. of Keegan Hayes (interview with C.L.P.), ¶¶ 43-63. The rest have disappeared from the ICE locator. Ex. E, Decl. of K. Narberes at ¶ 9. Based on C.L.P.'s account, ICE arrested him in a vehicle stop before they could have obtained any warrant for his arrest. *Id.* at ¶¶ 43-60. C.L.P. was in the passenger seat, with his brother E.G.M. driving and their cousin in the back. *Id.* at ¶ 48. The three men were going to work. *Id.* After an unmarked car began tailing them aggressively, his brother pulled the car over, but the vehicle followed behind. *Id.* at ¶ 49. Unidentified ICE officers approached both sides of the vehicle, and an officer asked his brother, the driver, for his ID. *Id.* at ¶ 52. His brother gave the man his SB 251 license. *Id.* At that point, the officers reached into both sides of the car and forced open the car doors. Officers pulled the men out of the car by their arms. *Id.* at ¶ 53. The officers had not asked anyone but the driver any questions at all. *Id.* at ¶¶ 53, 55. It was only after handcuffing

---

[5] Particularly given that January's production of one-third of Form I-213s for warrantless arrests included 20 warrantless arrests, and the production in February included only 5, while arrests have continued to increase, Plaintiffs are concerned that this "field warrant" practice is simply a method of reclassifying arrests that were in fact warrantless to exclude them from scrutiny by Plaintiffs and this Court, as they tried to do in the *Nava* litigation.

C.L.P. that officers even looked at his identification, which was in his pocket. *Id.* ¶ 56. C.L.P.'s account contradicts Defendants' assertion that officers obtained a warrant after the initial detention but before placing C.L.P. under arrest.

The fact that the arrest documentation for asserted "field warrant" arrests will confirm that such arrests are warrantless is bolstered by a Form I-213 Plaintiffs have obtained not from Defendants, but from an individual (D.C.C.) who was subjected to a warrantless arrest where ICE obtained a warrant after the initial stop. Ex. L. at P237.004-006. D.C.C. was arrested on January 14, 2026. *Id.* at P237.004. According to the I-213, ICE officers were at an address in Parker, CO "conducting surveillance" when they were able to positively identify a different man as the driver of a car they saw, such that they "were able to obtain a signed I-200 before [his] arrest." *Id.* at P237.005. After that arrest, in which officers physically forced the man into an ICE vehicle, "[a]nother Hispanic male"— D.C.C.—approached the officers. *Id.* The I-213 states that the officers asked his name, that he replied with his first name, and that the officers then asked for his ID, which he produced (a Colorado SB-251 license). *Id.* The I-213 states that the officers then asked him what country he is a citizen of, he answered Mexico, and then said "no" when officers asked whether he had any immigration documents. *Id.* Immediately thereafter, the I-213 says: "Officers identified themselves as Officers with ICE and informed him that he is under arrest for immigration violations." *Id.* It is only after this that the I-213 says the officers were able to run immigration checks that revealed no positive matches and that because of D.C.C.'s alleged admission of being unlawfully present, "officers were able to obtain a signed I-200." *Id.*

Based on the account of Mr. C.L.P. and the I-213 for Mr. D.C.C., the experience in *Nava*, and reports Plaintiffs' counsel have received, Plaintiffs believe that additional arrest documentation for asserted field warrant arrests will reveal that many, if not all, such arrests are in fact warrantless.

Finally, the requests for additional information in the Form I-213 are intended to make it more possible to monitor Defendants' compliance with federal law and this Court's PI moving forward.

### B.    The requested relief cannot wait.

Since the parties' initial conferral on Defendants' noncompliance on February 3, 2026, Defendants have taken the position that the evidentiary hearing and requests for additional relief are premature and that Plaintiffs and the Court should allow them more time to implement the order. The Court should reject these arguments.

First, the stakes of tolerating Defendants' noncompliance in this case are grave. Defendants have violated the order repeatedly and materially, and their noncompliance was as widespread in the February production as the January one. *Cf. Nava*, 806 F. Supp. at 835 (granting motion to enforce based on repeated, material violations of consent decree); *Castañon-Nava*, No. 1:18-cv-03757 (N.D. Ill. Feb. 27, 2026), ECF 314 (granting additional relief for continued material violations). Defendants continue to violate the requirements of § 1357(a)(2), and their failure to adhere to the Court's documentation requirements makes their noncompliance with federal law that much more difficult to monitor.

Granting Defendants more time to try to comply with the order—while they

continue to engage in warrantless arrests—means more people will continue to be unlawfully stripped from their families, their jobs, and their lives in Colorado. And once a person is arrested in violation of the order, that wrong is exceedingly difficult to remedy. That is not just because putative class members are subjected to the irreparable harms this Court has recognized, ECF 49 at 54-55, but also because of the practical realities that follow transfer to the immigration detention facility in Aurora. Because immigration judges in Colorado have as a matter of course been denying bond hearings to a huge number of detainees (whom this Court, like the Central District of California, has repeatedly held are not subject to mandatory detention), and because most people detained at the Aurora Detention Facility cannot access counsel to pursue such cases in habeas, most arrestees have faced the prospect of indefinite detention. Many choose to accept voluntary departure rather than remain in such difficult conditions. Others may be quickly deported. Whatever the reason, once someone is detained, they often quickly disappear from the ICE locator, making it near-impossible for class counsel to intervene or even learn about their arrest. Indeed, of the 29 Form I-213s produced by the government under the terms of the preliminary injunction, 22 of the named arrestees returned "no result" in the ICE locator as of February 26, 2026. Ex. E, Decl. of K. Narberes at ¶ 8. Of the 20 Form I-213s produced on January 16, 2026, 11 of the named arrestees were already gone the day Plaintiffs' counsel received the documents and learned their identities. *Id.* at 6.

Second, the Court should not credit Defendants' assertions that they have not had enough time to implement the order. The requirements of the preliminary injunction track

what Defendants represented was already ICE policy and Defendants relied on that representation to argue that the court's intervention was unnecessary at the outset. Given that Defendants were arguing in October 2025 that officers were already trained and acting in accordance with Plaintiffs' requested relief, ECF 26 at 3; Oct. 24, 2025 Status Conf. Tr. at 9:17-10:1,13:4-15:12, they cannot now argue, in March of 2026, that their current and ongoing noncompliance is attributable to a learning curve.

The actions and statements of senior officials in the Administration offer a different explanation for why Defendants' agents in Colorado continue to violate this Court's orders. First, a memorandum issued on January 28, 2026 by Defendant Todd Lyons, the acting head of ICE, to all ICE personnel purports to relieve immigration officers in the field of the responsibility to make a flight risk determination prior to effecting a warrantless arrest, and to authorize officers to make warrantless arrests whenever they determine "an alien is [un]likely to remain at the scene of the encounter." Ex. J, Lyons Memo, at 4. The memo states that factors relevant to the determination include "the subject's ability and means to promptly depart the scene of the encounter (e.g., the subject was encountered in a vehicle and continues to have control over the vehicle)" and whether "the officer has probable cause to arrest the subject for improper entry." *Id.* at 4-5. As one former ICE senior advisor put it, the memo's "extremely broad definition of the term 'escape' . . . would cover essentially anyone they want to arrest without a warrant, making the general premise of ever getting a warrant pointless."[6]

---

[6]Hamed Aleaziz & Charlie Savage, ICE Expands Power of Agents to Arrest People Without Warrants, N.Y. Times (Jan. 30, 2026), permalink: https://perma.cc/5J82-ZYN5.

In recent proceedings in the *Nava* case, ICE represented that this new Lyons memo—which flatly contradicts this Court's preliminary injunction order—would govern arrests in Colorado (and the rest of the country outside the Illinois court's jurisdiction). The government stated that while the prior court-ordered Broadcast Statement of Policy applies in ICE's Chicago Area of Responsibility, "[a]ll other ICE offices should continue to adhere to the [Lyons Memo]." *Castañon-Nava*, No. 1:18-cv-03757 (N.D. Ill. Feb. 23, 2026), ECF 309, at 2-3. Moreover, DHS has repeatedly stated, as recently as January 31, 2026, that immigration offers "use reasonable suspicion to make arrests,"[7]—as opposed to the proper legal standard required by the law and this Court's order of probable cause--and further that the Lyons Memo is "nothing new."[8] It is no wonder that immigration officers in Colorado continue to act in ways that violate this Court's order.

In light of this direction from senior officials in the administration that contradict this Court's order, Defendants' noncompliance with the order is not an aberration. In *Nava*, even after the District Court in Illinois extended the consent decree in October 2025 based on ICE's substantial noncompliance, Defendants continued to violate its terms; most recently, on February 27, 2206, the court identified 36 additional violations and ordered the release of the people ICE had unlawfully arrested. Order at 4-5, *Castañon-Nava*, No. 1:18-cv-03757 (N.D. Ill. Feb. 27, 2026), ECF 314; *see also* Order, *Castañon-Nava*, 1:18-

---

[7] *E.g.*, Anthony Iafrate, "*Nothing but Green Lights": ICE Memo Expands Agents' Warrantless Arrests*, Daily Caller (Jan. 31, 2026) (quoting DHS spokesperson Tricia McLaughlin), permalink: https://perma.cc/7WHJ-YYT8; Ex. K, @DHSgov, Twitter, (Jan. 16, 2026).

[8] *Nothing But Green Lights*, *supra* n. 7 (quoting MCLaughlin).

cv-03757 (N.D. Ill. Feb. 23, 2026), ECF 309; Order, *Castañon-Nava*, 1:18-cv-03757 (N.D. Ill. Feb. 17, 2026), ECF 301. Indeed, in every case where the government is under court order to adhere to the requirements of §1357(a)(2) and documentation requirements like those imposed by this Court,[9] the plaintiffs have had to return to court to seek compliance.[10] In short, Defendants' noncompliance requires this Court's attention.[11]

For all these reasons, the Court should grant further relief to preserve the rights that the preliminary injunction sought to protect.

---

[9] With the exception of the Oregon lawsuit, where the preliminary injunction only recently issued *M.J.M.A. v. Hermosillo*, No. 6:25-cv-02011-MTK (D. Or. Feb. 27, 2026), ECF 88.

[10] Notice & Mot. Enforce Prelim. Inj., *United Farm Workers v. Noem*, 1:25-cv-00246-JLT-CDB (E.D. Cal. Aug. 29, 2025), ECF 81; Pls.' Mot. Enforce Prelim. Inj., *Escobar Molina v. U.S. Dep't of Homeland Sec*, No. 1:25-cv-03417-BAH (D.D.C. Feb. 19, 2026), ECF 78; Pls.' Mots. Enforce Consent Decree, *Castañon-Nava*, No. 1:18-cv-03757 (N.D. Ill. Mar. 13, 2025; Jan. 23, 30, & Feb. 3, 20, 2026), ECF 164, 279, 280, 284, 305.

[11] Indeed, federal courts around the country have taken note of the government's unprecedented noncompliance with judicial orders in cases challenging unlawful immigration enforcement. *See, e.g.*, Supp. Order at 6, *Juan v. Noem*, No. 26-cv-00107-PJS-DLM (Feb. 26, 2026), ECF 12, (Schiltz, C.J.) ("The Court is not aware of another occasion in the history of the United States in which a federal court has had to threaten contempt—again and again and again—to force the *United States government* to comply with court orders."); Order Granting Pl.-Pr.'s Mot. Enforce at 5-6, *Maldonado Bautista v. Santacruz*, No. 5:25-cv-1873 (C.D. Cal. Feb. 18, 2026), ECF 1116 (Sykes, J.) ("One might assume that four separate orders issued by a federal district court interpreting a federal statute would make clear that enforcing executive policies premised on a contrary legal interpretation is improper. Remarkably, that has not been the case."); *see also* Mattathias Schwartz, Zach Montague & Ernesto Londoño, *Judges Grow Angry Over Trump Administration Violating Their Orders*, N.Y. Times (Feb. 24, 2026), permalink: https://perma.cc/UK9J-8NQ5.

Respectfully submitted,

DATED: March 3, 2026

*/s/ Anna I. Kurtz*
Timothy R. Macdonald, Bar No. 29180
Annie Kurtz, Bar No. 51525
Emma McLean Riggs, Bar No. 51370
Sara Neel, Bar No. 36904
Scott Medlock, Bar No. 57210
American Civil Liberties Union of
Colorado
303 E. 17th Avenue, Suite 350
Denver, CO 80203
Telephone: (303) 777-5482
tmacdonald@aclu-co.org
akurtz@aclu-co.org
emcleanriggs@aclu-co.org
sneel@aclu-co.org
smedlock@aclu-co.org

Kenzo Kawanabe, Bar No. 28697
Sean Grimsley, Bar No. 36422
Bianca Miyata, Bar No. 42012
Olson Grimsley Kawanabe Hinchcliff &
Murray LLC
700 17th Street, Suite 1600
Denver, CO 80202
Telephone: (303) 535-9151
kkawanabe@olsongrimsley.com
sgrimsley@olsongrimsley.com
bmiyata@olsongrimsley.com

Hans Meyer, Bar No. 37812
Meyer Law Office
1547 Gaylord Street
Denver, CO 80206
Telephone: (303) 831-0817
hans@themeyerlawoffice.com

*Attorneys for Plaintiffs*