**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-03183-RBJ

RAMIREZ OVANDO, et al.,

       Plaintiffs,

  v.

NOEM, et al.,

       Defendants.

---

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO ALLOW INDIVIDUAL DEPORTATION OFFICERS TO TESTIFY UNDER PSEUDONYM AND MOTION FOR RECONSIDERATION OF ORDER IN ECF 93**

Plaintiffs take the safety of all parties and witnesses in this case extremely seriously. But the government has failed to present the exceptional circumstances necessary to overcome the bedrock presumption of open testimony by government agents to allow for the ICE agents in this case to testify using pseudonyms. Indeed, both parties, including Defendants themselves, put the names of ICE officers involved in the unlawful arrests of Plaintiffs in the public record at the hearing on the preliminary injunction in this case, including in both testimony and stipulated exhibits. The Court should deny Defendants' Motion for Leave to Allow Individual Deportation Officers to Testify Under Pseudonyms (ECF 89) and reconsider the grant of that motion in ECF 93.[1]

---

[1] Plaintiffs conveyed to Defendants their opposition to the motion and reasons therefor in conferral in advance of Defendants' filing. Plaintiffs also noted their opposition (and intent to file a response in opposition) in their witness list at ECF No. 85 at n.1.

### A. The General Rule is Witnesses Testify Under their Own Names

Parties and witnesses may proceed under a pseudonym "only in those exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity. The risk that a plaintiff may suffer some embarrassment is not enough." *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000). But even before permitting pseudonymity when there are "exceptional circumstances," *id.*, Courts must also "weigh the interests of the public, which are presumptively paramount, against those advanced by the parties." *Daines v. Harrison*, 838 F. Supp. 1406, 1408 (D. Colo. 1993). Indeed, "it is the responsibility of judges to avoid secrecy" as "[e]ven a superficial recognition of our judicial history compels one to recognize that secret court proceedings are anathema to a free society." *Doe v. Fed. Bureau of Investigation*, 218 F.R.D. 256, 258 (D. Colo. 2003) (denying pseudonymity to confidential informant).

The party seeking pseudonymity shoulders the burden of rebutting the strong presumption against it. *Doe v. Vail Resorts, Inc.*, 18-cv-197-MEH, 2018 WL 11615589, at *2 (D. Colo. Apr. 10, 2018). Indeed, the sole Tenth Circuit opinion cited by the government *rejected* an individual's ability to proceed under a pseudonym, despite presenting more compelling circumstances than the government does here. *See Femedeer*, 227 F.3d at 1246-48 (concluding a plaintiff convicted of a sex offense's request did not present the "exceptional circumstances warranting" pseudonymity).

### B. Defendants' Evidence Does Not Carry Defendants' Heavy Burden

"[C]ircuits affirming the use of anonymous testimony have done so in part because

the Government produced specific evidence of a threat" – such as evidence that a narcoterrorist organization "had killed people suspected of helping to arrest the defendant and had threatened to kill cooperating witnesses." *U.S. v. Gutierrez de Lopez*, 761 F.3d 1123, 1144 (10th Cir. 2014). A "threat to these witnesses and their families, should their true identities be provided, [must be] actual and not a result of conjecture," and generally requires evidence like "sealed affidavits or any other specific evidence of a threat." *Id.* at 1145.

In contrast, the type of "generalized statements" offered by the government here are insufficient to support anonymity. *Gutierrez de Lopez*, 761 F.3d at 1145. The Tenth Circuit has affirmed that even more serious assertions than the government offers here – "such as '*anyone* who testifies against one of a gang's members faces danger from that gang'" – are "insufficient to show that a threat against a witness was 'actual and not a result of conjecture.'" *Id.* at 1144 (emphasis in original, quoting *U.S. v. Ramos-Cruz*, 667 F.3d 487, 500 (4th Cir. 2012)). Using headlines from other states – as the government does here – does not satisfy the concrete and particularized threat required to justify pseudonymity. A press release discussing a conviction in California (where the ICE agent's identity is now in the public record[2]), and articles describing events in Texas – with statistics unsupported by any evidence – are insufficient. None of these articles show

---

[2] *See, e.g.*, James Quelly, "L.A. feds ramp up use of 'doxxing' charges as anti-ICE protesters fear chilling effect," L.A. Times, March 6, 2026, available at: https://www.latimes.com/california/story/2026-03-06/ice-monitoring-doxing-charges-los-angeles [https://perma.cc/KQ3U-PH7J] (describing officer's testimony under his own name").

any present and defined risk to agents here in Colorado, let alone the type of risk that justifies hiding the identity of witnesses from the public. *See contra Does v. Rodriguez*, 06-cv-805-LTB, 2007 WL 684114, at \*\*2-3 (D. Colo. Mar. 2, 2007) (granting anonymity when paralegal overheard threats made by members of defendant's family, where criminal records showed "firearms were found" at defendant's home, and lawsuit alleged that defendant had engaged in "violence and coercion").

Defendants have presented no evidence of present and defined risks to witnesses here. An article addressing the proceedings in Los Angeles that Defendants raise in their exhibits explains:

> [I]ncidents in which the publication of an agent's name has lead to an in-person clash are rare, and criminal prosecutions for 'doxxing' are even rarer. The charge has been brought by federal prosecutors only five times since President Trump was reelected, according to a review of court records, and all of those cases were filed in Los Angeles.[3]

As this article also reports, when asked to identify any single incident other than the case in Los Angeles, government officials were unable to do so.[4] In fact, one of the articles the government points to does not provide specific threats against ICE agents, but actually describes people "chant[ing], play[ing] drums and bang[ing] pots" outside a hotel in Minneapolis, a "cooperative and peaceful" march in Philadelphia, a nonviolent rally in Portland, Oregon, chanting in Atlanta, and a march in Washington, D.C. where "there

---

[3] *See, e.g., id.* (noting that local police "said there were no repeat incidents at the agent's home. No one was injured and no weapons were found"). The women in the press release cited by the government were not convicted of "doxxing" the agent, but of the lesser offense of stalking. *Id.*

[4] *Id.*

-4-

were no arrests."[5]

The cases the government cites are distinguishable – both because they involved real, specific threats to the parties, and because (unlike here) the public had no compelling interest in the identities of the plaintiffs. *See*, *e.g.*, *Doe v. Bondi*, 25-cv-02712-DDD, 2025 WL 3516292, at *10 (D. Colo. Nov. 4, 2025) (asylum-seeker whose parent was "a former high-ranking official in the Nicaraguan government" facing retaliation by Nicaraguan government – "the public's interest in this case does not outweigh the petitioner's interest in anonymity for the safety of himself and his family"); *Doe v. Heil*, 08-cv-2342, 2008 WL 4889550, *3 (D. Colo. Nov. 13, 2008) (because prisoner convicted of a sex offense faced "a heightened risk of physical harm" while in custody, and "Defendants' ability to conduct discovery or mount a defense" would not be impaired, plaintiff could proceed anonymously).

Put simply, police agencies' desire to "avoid embarrassment" or "harm to the reputation of the parties" – at best, the showing the government has made here – is "certainly not a compelling reason to grant a confidentiality order." *Daines*, 838 F.Supp. at 1408.[6]

---

[5] Chandelis Duster & Sergio Martínez-Beltrán, "Nationwide anti-ICE protests call for accountability after Renee Good's death," Nat'l Public Radio, Jan. 11, 2026, available at: https://www.npr.org/2026/01/10/nx-s1-5673229/ice-protests-minneapolis-portland-renee-good [https://perma.cc/LF3B-JM82].

[6] Nor is this a matter of fairness between the parties. Only two of the five named plaintiffs are proceeding under pseudonyms – and the pseudonymous plaintiffs produced real evidence that they will be threatened if required to proceed under their real names. *See* ECF 11, pp. 4 & 6-8 (describing specific dangers in Plaintiffs' birth countries and threats to immigrants in Denver, Colorado) & Ex. A (Decl. of J.S.T., describing his application for

### C. Public Policy Reasons Demand Law Enforcement Officers Testify Under Their Own Names

Not only did the government fail to meet its burden to show a need for pseudonymity, but the public's interest in transparency in this case is at its apex. Indeed, one can draw a straight line between the serious and widespread misconduct among ICE agents and the heightened public scrutiny surrounding them.[7] *See Jakuttis v. Town of Dracut*, 656 F. Supp. 3d 302, 349–50 (D. Mass. 2023). Public access and transparency is a feature – not a bug – of addressing the systemic issues that exist in ICE's current arrest and enforcement practices. *Cf. Robinson v. City of Huntsville*, 5:21-cv-704-AKK, 2021 WL 5053276, at *3 (N.D. Ala. Nov. 1, 2021) (observing that the public's access to police bodycam footage of an officer's shooting "is imperative to foster dialogue about whether structural reforms in policing are needed").

In hundreds, if not thousands, of criminal proceedings in this nation's courts every day, police officers testify under their own names. Even in cases where the opposing

---

asylum and persecution he would face if forced to return to Mexico and the danger of disclosing his status as a gay man with HIV), Ex. D (Decl. of G.R.R., describing private facts about his family and immigration status, and concerns about his family's safety). *See also* FED. R. CIV. PROC. 5.2(c) (creating exception to the general rule regarding proceeding under real names in immigration cases). And, unlike the ICE agents, Plaintiffs J.S.T. and G.R.R. are unlikely to be involved in litigation elsewhere such that the public and other litigants have a need to know their true names. *See infra*.

[7] Even the headline of the news articles the government cites does so – "Nationwide anti-ICE protests *call for accountability after Renee Good's death*." *See supra* at n. 4 (emphasis added).

party is accused of significant violence.[8] Even in cases where threats were made against a police officer. *See, e.g., People v. Clark*, 370 P.3d 197, 206 (Colo. App. 2015) (police officer testifying about defendant's gang affiliation in first degree murder case).

When courts do permit pseudonym testimony for government agents, those agents are most often undercover during the events at issue or thereafter, and there is a legitimate risk of blowing their cover through in-court testimony. *U.S. v. Urena*, 8 F. Supp. 3d 568, 573 (S.D.N.Y. 2014) (government's interest in protecting an undercover detective's safety and viability as an asset "overwhelmingly outweighs the defendants' interest in public disclosure of his true name"). Likewise, "certain federal employees, including intelligence officers, have identities that are 'sensitive and highly personal.'" *See Doe v. U.S. Off. of the Dir. of Nat'l Intel.,* 25-cv-300-AJT-LRV, 2025 WL 751995, at *1 (E.D. Va. Feb. 21, 2025) (granting motion to proceed under pseudonym for intelligence officers of the CIA and Office of the Director of National Intelligence). But that's not the ICE agents who will be testifying here.

To the contrary, although ICE has adopted a practice of some agents wearing masks in carrying out arrests in public, their doing so – as one court recently concluded – is cause for great concern. "[T]he deployment of masked and anonymous agents to execute a civil arrest strips the seizure of the accountability the Fourth Amendment presupposes and renders it unreasonable." *Urquilla-Ramos v. Trump*, --- F.Supp.3d ----,

---

[8] Erin McIntyre, *Man Gets 8 years for Cop Threats*, Ouray Cnty. Plaindealer (Sept. 20, 2023) https://www.ouraynews.com/2023/09/20/man-gets-8-years-for-cop-threats/ [https://perma.cc/LSW9-NGQT] (officers testify against defendant convicted of stalking and threatening them).

2026 WL 475069, at *4 (S.D. W.Va. Feb. 19, 2026)). That is, enforcement stops without identification "remain a rare exception, not the rule" and, even in those rare instances, the reason for being nameless and faceless can't be for the officer's protection. *Doornbos v. City of Chicago*, 868 F.3d 572, 584 (7th Cir. 2017); *Urquilla-Ramos*, 2026 WL 475069, at *7. If that were enough, "all officers across America might take to the streets in masks, but that would run contrary to the transparency and accountability our democracy demands." *Urquilla-Ramos*, 2026 WL 475069, at *7. The bottom line is, apart from the narrow category of undercover agents, which ICE agents are not, law enforcement officers aren't permitted to hide their identities from the public — either out in the world, or when testifying in court — and neither should the ICE agents here. *See also Transgender Law Center v. U.S. Immigration and Customs Enforcement*, 775 F. Supp. 3d 131, 163 (D. D.C. 2025) (requiring under the Freedom of Information Act disclosure of the identity of a narrator of an ICE internal training video).

Moreover, because the allegations in this case are unfortunately not outliers, *see* ECF 82, pp. 14-15 (discussing companion cases), permitting pseudonym testimony under these circumstances could both set a bad precedent across the country for future cases in which ICE agents are called to testify, and complicate meaningfully litigating these cases and others. *Urquilla-Ramos*, 2026 WL 475069, at *8 ("When the public cannot readily determine who is acting under government authority, it is difficult to regard the actions as legitimate exercises of law enforcement power"). Anonymity is particularly inappropriate where individuals may be involved in multiple lawsuits, and their credibility is at issue – as is true here. *See Lou*, 71 F.4th at 1293 (affirming denial of motion to

proceed under pseudonym in part based on the party's "other Jane Doe cases involving similar circumstances").

Indeed, in other related litigation federal judges have determined that immigration officials fundamentally lack credibility. *See, e.g., Illinois v. Trump*, 2025 WL 2886645, *5 (N.D. Ill. Oct. 10, 2025) (finding ICE agents' declarations "demonstrate[ed] a potential lack of candor"). Moreover, ICE agents are moved around the country to participate in operations in different states – indeed, the government has requested that one of its agents involved in the warrantless arrests at issue in this proceeding (which Plaintiffs maintain were done in violation of this Court's order) testify remotely in this case because he is engaged in operations right now in another state. The recent case in Oregon confirmed that agents on temporary assignments from around the country, including from Colorado, were engaged in warrantless arrests deemed unlawful there. *See M-J-M-A- v. Hermosillo*, --- F.Supp.3d ----, 2026 WL 562063, *3 (D. Or. Feb. 27, 2026) ("ICE officers traveled to Portland, Oregon from their usual duty stations in Arizona, California, *Colorado*, Minnesota, and Nebraska"). Thus, potential litigants and impacted people in other jurisdictions have a right to know the agents' identities, including to evaluate potential claims, and to cross-examine officers about their activities and statements elsewhere should the need arise. Likewise, the public and members of the press have a right to know what individual agents are doing here and across the country and evaluate what their government is doing about it; both of which are undermined by concealing the identities of the agents who are testifying about these warrantless arrests.

This is especially true because courts in those other jurisdictions – including in the

-9-

very case the government cites to – have noted these officers' credibility is a serious concern. *Id*. at **4-7 (giving "[n]o weight to [agents'] unsupported testimony," describing ICE agent's testimony as "unfounded" or "not credible," stating "no evidence" supported officers statements, and observing agents' statements and documentation "do[] not accurately reflect what happened"). "The right to 'ask the witness who he is and where he lives' … is 'the very starting point in exposing falsehood and bringing truth out through cross-examination' when 'the credibility of a witness is in issue.'"[9] *U.S. v. Gutierrez de Lopez*, 761 F.3d 1123, 1144 (10th Cir. 2014) (quoting *Smith v. Illinois*, 390 U.S. 129, 131 (1968)).

### D.  Defendants Identified ICE officers in the public record at the PI Hearing

Finally, Defendants' own conduct in this case undermines their current contentions about the need for officer anonymity. At the hearing on the PI, Plaintiffs' Exhibits 15, 16, 17, and 18—Form I-213s that identify the unredacted names of officers involved in the arrests (as well as officers involved in processing)—were admitted either by stipulation of the parties or with no objection by Defendants. PI Tr. vol. 1, Oct. 30, 2025, at 123, 188. Defendants' own exhibits in evidence also included Form I-213s and Form I-200s identifying officers by name with no redactions. PI Tr. vol. 2, Oct. 31, 2025, at 245, 289-90. And Government witnesses discussed these exhibits and named officers identified in the documents in their testimony in open court. *E.g.*, PI Tr. vol. 2, Oct. 31, 2025, at 338:22-339:2 (exam of Gregory Davies).

---

[9] Plaintiffs have agreed not to ask agents to identify their home address or other personal identifying information that is unnecessary, like their age.

### E. Conclusion

The Court should deny the government's motion and require the ICE agents to testify under their own names, and reconsider the grant of that motion in ECF 93.

DATED: March 8, 2026

Respectfully submitted,

/s/ Timothy R. Macdonald
Timothy R. Macdonald, Bar No. 29180
Anna Kurtz, Bar No. 51525
Emma Mclean-Riggs, Bar No. 51370
Sara Neel, Bar No. 36904
Scott Medlock, Bar No. 57210
ACLU of Colorado
303 E. 17th Avenue, Suite 350
Denver, CO 80203
Telephone: (303) 777-5482
tmacdonald@aclu-co.org
akurtz@aclu-co.org
emcleanriggs@aclu-co.org
sneel@aclu-co.org
smedlock@aclu-co.org

Kenzo Kawanabe, Bar No. 28697
Sean Grimsley, Bar No. 36422
Bianca Miyata, Bar No. 42012
Olson Grimsley Kawanabe Hinchcliff & Murray LLC
700 17th Street, Suite 1600
Denver, CO 80202
Telephone: (303) 535-9151
kkawanabe@olsongrimsley.com
sgrimsley@olsongrimsley.com
bmiyata@olsongrimsley.com

Hans Meyer, Bar No. 37812
Meyer Law Office
1547 Gaylord Street
Denver, CO 80206
Telephone: (303) 831-0817
hans@themeyerlawoffice.com

*Attorneys for Plaintiffs*

-12-

## CERTIFICATE OF SERVICE

I certify that on March 8, 2026 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will cause notice to be delivered electronically to all counsel of record.

/s/ Timothy R. Macdonald