**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-03183-RBJ

REFUGIO RAMIREZ OVANDO, et al.,
Plaintiffs,

v.

MARKWAYNE MULLIN et al.,
Defendants.

---

**Plaintiffs' Status Report and Notice of Noncompliance**

---

Plaintiffs file this Status Report and Notice of Noncompliance to inform the Court of Defendants' continued noncompliance with 8 U.S.C. § 1357(a)(2), the Court's November 25, 2025 Preliminary Injunction ("PI"), ECF 49, and the Court's May 12, 2026 Order ("Enforcement Order") enforcing the PI, ECF 112.

The Enforcement Order required, among other things, Defendants to produce within 30 days and on the 10th day of every month thereafter Form I-213s and associated administrative warrants and Notices to Appear in three categories: "(a) all warrantless arrests and (b) arrests in which the government claims they obtained a warrant after the encounter began . . . and (c) arrests in this District for which plaintiffs have requested documentation on a good-faith basis to believe the arrested individual was not a 'target,' from the date of the preliminary injunction." ECF 112, at *59.

Defendants have made three monthly productions since the Enforcement Order and multiple productions for individuals in category (c). Based on Plaintiffs' review of the records produced, as well as independent interviews of those Immigration and Customs

Enforcement ("ICE") arrested in Colorado since the Enforcement Order, Defendants continue to make warrantless arrests without the requisite flight risk analysis; Defendants make warrantless arrests under the guise of field warrants; Defendants do not accurately report to Plaintiffs the number of relevant arrests made; and Defendants have failed to produce significant records ordered by the Court to Plaintiffs.

## I. Defendants Continue to Violate 8 U.S.C. § 1357(a)(2) and the PI.

Defendants represented in their June production that ICE arrested five people without a warrant and provided I-213s for four of those people. All four I-213's fail to comply with the PI or the statute because (with one exception) they do not suggest that the person was likely to escape before ICE could obtain a warrant, and none contain the specific particularized facts that could support such a conclusion, as required by this Court's PI and Enforcement Order. Ex. A.

Defendants' June production also included documents for individuals in category (c). The documents evidence ICE arresting a person for whom a prior warrant existed, but ICE did not arrest them pursuant to that warrant; i.e., the arrested person's I-213 demonstrates that ICE arrested them without knowing that a warrant existed (and without conducting a flight-risk analysis) and realized only afterwards that an I-200 existed. Ex. B.

Plaintiffs' review of Defendants' document production reveals that this practice is not uncommon. Plaintiffs identified another seven people where separate I-213s showed that ICE warrantlessly arrested those individuals and requested the individuals' documents under category (c). Ex. C at 1–9. In response, Defendants claimed that the

narrative section of the three I-213s must be "incorrect" because there were "pre-existing warrants" for "most (if not all of those individuals)." Ex. D. But the I-213s for these seven people make clear that ICE's arresting officers were not aware of those purported "pre-existing warrants" and believed that they were, in fact, making warrantless arrests or arrests pursuant to newly obtained field warrants. Ex. E at 1–9, 11–23. In other words, the documents demonstrate that ICE often arrests people without warrants, and only later discovers that a prior warrant existed for them somewhere in the ICE files.

Defendants' August production shows that ICE also claimed to arrest a person pursuant to a warrant but did not in fact have a warrant for the person and instead had a warrant for someone else. Plaintiffs requested this person's materials under category (c). In response, Defendants produced the individual's I-213 and Notice to Appear ("NTA") but could not produce a warrant because none existed for him. Defendants have stated that they are unable to locate the I-200 warrant, even though the I-213 (misleadingly) states that the ICE agents "informed [the subject] of the warrant, presented the document to him, and ordered him to exit the vehicle." Ex. F at 2.

Plaintiffs interviewed this individual at the Aurora ICE Processing Center in the last two weeks. Plaintiffs received from the person's immigration counsel the I-200 that ICE agents showed him and that ICE counsel filed in his removal proceedings. The I-200 identifies a different person. Ex. G at 3. The arrested person confirmed that ICE showed him a warrant through the window of his car with a different person's name on it, and when he told ICE that he was not the person named on the warrant, ICE agents told him that they did not care. *Id*. at 1–2. In fact, in response to the arrested person requesting

clarification of why ICE was arresting him, the officers broke his car window, pulled him out of his car, and refused his offer to show them identification. ICE agents then handcuffed him with metal handcuffs so tight that his wrists bled while they transported him to the ICE field office in Colorado Springs. ICE agents did not ask him any questions, including his name, until he was at the ICE office and made no effort to evaluate his flight risk. This arrest was warrantless, violated the statute, and violated the PI.

## II. Defendants Mischaracterize Warrantless Arrests as Arrests Pursuant to Field Warrants.

Review of Defendants' document production and Plaintiffs' investigation further revealed that Defendants mischaracterize arrests as pursuant to field warrants when they are, in fact, warrantless.

### a. <u>Defendants' Production Shows that ICE Arrests People First and Produces Invalid Field Warrants Second</u>.

This Court acknowledged the "unremarkable proposition" that an arrest is warrantless if ICE arrests the person prior to the production of the field warrant. ECF 112, at *49; *See also Juan J.M.E. v. Easterwood*, 2026 WL 1746672, at *3 (D. Minn. June 8, 2026) (noting that an arrest was warrantless because the government failed to show "that the arrest warrant . . . preceded [the] arrest") *report and recommendation adopted sub nom. Juan M.E. v. Easterwood*, 2026 WL 1747756 (D. Minn. June 17, 2026); *Parada Cruz v. Mullin*, --- F.Supp.3d ---, 2026 WL 1027441, at *3 (E.D.N.Y. Apr. 16, 2026) ("Using an after-the-fact warrant to justify a prior arrest is constitutionally problematic. It is also statutorily prohibited under the INA"). Defendants' production shows this is a common occurrence. Defendants' June, July, and August productions included evidence of ICE

agents detaining, handcuffing, and arresting individuals without conducting a flight risk analysis and thereafter obtaining a field warrant. Ex. H.[1] These arrests were therefore warrantless and in violation of the PI. ECF 112, at *49.[2]

After the August production, Plaintiffs conducted in-person interviews at the Aurora ICE Processing Center with people Defendants claim were arrested pursuant to field warrants. One of the individuals, an eighteen-year-old, explained that ICE officers handcuffed him with metal handcuffs behind his back, punched him in the face, walked him down three flights of stairs to the ground floor while handcuffed, and put him into their vehicle while handcuffed and before even asking his name. *Compare* Ex. I (arrested person's affidavit explaining his arrest) *with* Ex. C at 4–6 (relevant I-213). Therefore, despite ICE's production of a field warrant for this arrest, it was warrantless and in violation of the PI.[3]

Another individual interviewed shared that while on the way to work ICE pulled over the truck in which he was a passenger. ICE surrounded the truck with four ICE vehicles. Six masked officers with guns on their hips exited the vehicle and surrounded the vehicle. Two approached, opened the truck's doors without permission, and shouted

---

[1] The I-213s also indicate that these field warrants were obtained before an NTA could have been issued so the warrants were invalid in any event, as described *infra* at pp. 8–10. For this additional reason, these arrests were warrantless, even if they were not arrested before the field warrants were obtained. Notably, Defendants have not produced the NTAs for three of these four and did not produce the warrant for one of these four.

[2] The I-213 from the July production also fails to comply with the PI because this arrest occurred at a place of business and the I-213 did not indicate whether the person ICE arrested was employed there.

[3] The I-213 narrating this arrest also indicates that the field warrant was issued before an NTA could have been issued so the warrant was invalid in any event. *See* pp. 8–10, *infra*.

at the truck's occupants to show them their papers. This individual told the officer nearest him that he did not have any papers. In response, the officer grabbed him, pulled him out of the truck, handcuffed his hands with metal handcuffs behind his back and chained his ankles. The officer only then asked for the arrested person's name.[4] The only other question ICE asked him prior to putting him into an ICE vehicle and transporting him to an ICE office in Colorado Springs was whether he had family in the U.S. military. *Compare* Ex. J (arrested person's affidavit explaining his arrest) *with* Ex. C at 7–9 (relevant I-213). The arrest was therefore warrantless and in violation of the PI.[5]

Plaintiffs requested the documents for another eighteen-year-old ICE arrested in August. The Form I-213 demonstrates that ICE did not know him prior to arresting him on August 4, 2026, and the I-213 does not include any particularized facts as to why ICE believed the young man was a flight risk either before or after arresting him. Ex. K at 1–4. The production included an I-200 dated August 4, 2026 but served on August 7, 2026. *Id*. at 5. Defendants have yet to produce the NTA, but Plaintiffs received it from the young man's immigration counsel; it is dated August 7, 2026, three days after the arrest. Ex. L at 8.[6]

---

[4] The I-213 falsely states that officers obtained a field warrant and "presented" it to him while he was still in the car. Ex. C at 8. That never happened, Ex. J, and is inconsistent with ICE's typical practice of pulling people from vehicles across the state.

[5] The field warrant was also invalid because it was issued before the NTA, as described *infra* at pp. 8–10. *Compare* Ex. C at 10 (NTA, dated July 1, 2026) *with id*. at 13 (I-200, dated June 29, 2026).

[6] Once again, the field warrant was also invalid because it was issued and executed before the NTA, as described *infra* at app. 8–10. *Compare* Ex. L at 8 (NTA, dated August 7, 2026) *with* Ex. K, at 5 (I-200, dated August 4, 2026).

The I-213 details that ICE arrested him while he was a passenger in a car parked at a 7-Eleven. ICE pulled at least one weapon, broke the window of the vehicle, and extracted him from the car, throwing him to the ground and handcuffing him. ICE then transferred him from the 7-Eleven to another area at which ICE identified themselves, conducted an interview to learn his identity, and told him why he was arrested. The I-213 claims that the arrest was pursuant to a warrant despite detailing that ICE did not know his identity until after he was handcuffed and taken to another area. Ex. K at 1–4. This arrest was warrantless and in violation of the PI.

The arrest was also violent.



The young man suffered a broken wrist, a laceration to his hand, and multiple lacerations to his forehead and face. Ex. L. at 1–7. His right eye was swollen shut for days. The young man did not resist arrest, did not have prior criminal legal contact, or otherwise provoke ICE's violence; nor does the I-213 make any such allegations. Ex. K at 1–4. Instead, the I-213 notes that the individual requested medical assistance after his arrest and was taken to the hospital. *Id*. At the hospital, ICE prevented him from speaking to someone who wanted to talk with him. Ex. L at 1–3. ICE then told him that nobody was supposed to know where he was, and as a consequence of the person trying to speak to him, they would not offer him a phone call. *Id*.[7]

Plaintiffs also requested under category (c) the relevant materials for the driver of the vehicle from which ICE extracted and then assaulted the eighteen-year-old. The I-213 provides that ICE did not know him either prior to arresting him on August 4, 2026 and the I-213 does not include any particularized facts as to why ICE believed he was a flight risk before arresting him. Ex. K at 6–9. The I-213 details that he was the driver of a car registered to an ICE target who ICE saw enter the front passenger seat of the vehicle. ICE then violently arrested him (the driver), throwing him to the ground and handcuffing him at gunpoint prior to even asking his name. ICE then transferred him from the 7-Eleven to another area at which ICE first identified themselves, conducted an interview to learn

[7] The I-213 for this arrest also fails to comply with the Court's PI because the arrest occurred at a place of business and the I-213 did not indicate whether the person ICE arrested was employed there. Ex. K at 1–4. Notably, ICE neither served this person an NTA nor an I-200 until three days after the arrest while he was already at the Aurora ICE Processing Center. *Id*. at 5 (I-200); Ex. L at 8 (NTA). ICE waited three days after his arrest to interview him at the detention center, which is an uncommon delay for the interview.

his identity, and told him why he was arrested. The I-213 claims that the arrest was pursuant to a warrant despite detailing that ICE did not know his identity until handcuffing him and transporting him to the other area. Ex. K at 6–9.

Plaintiffs also interviewed this individual, the driver. His account mirrors the young man's who ICE extracted, assaulted, and then arrested. Ex. M. The driver shared that an ICE officer pointed a gun at him (the driver), opened his car door without permission, pulled him out of the truck, shoved him to the ground and placed his hands in metal handcuffs behind his back. While on the ground and handcuffed, he witnessed ICE slamming the young man's face on the pavement. ICE then put him (the driver) into an ICE vehicle and transported him to another location. ICE did not ask him any questions until arriving at the second location. *Id*. This arrest was therefore warrantless and in violation of the PI.

b. Defendants' Production Shows that ICE Effectuates Arrests with Invalid Warrants, Rendering the Arrests Warrantless.

An arrest purportedly pursuant to a field warrant that is issued prior to the issuance of an NTA is also warrantless because warrants are invalid unless they are issued after (or contemporaneously with) an NTA. *See* 8 C.F.R. § 1236.1(b)(1); *Martinez-Salamanca v. Baltazar*, 26-cv-042410-PAB, 2026 WL 2083209, at *3 (Brimmer, J.) (D. Colo. July 20, 2026) (finding that because the NTA "was not issued until after the petitioner's arrest . . . the Form I-200 warrant was invalid. Therefore, the petitioner was not arrested pursuant to a valid warrant . . ."); *See also Loaeza v. Bausch*, 26-CV-00945-MAV, 2026 WL 2150155, at *2 (W.D.N.Y. July 27, 2026) (noting the requirement that removal proceedings must be pending for a warranted arrest pursuant to § 1226(a) to be lawful); *Matovu v.*

*Mullin*, CIV-26-630-SLP, 2026 WL 1387476, at *3 (W.D.Okla. May 18, 2026) (finding an arrest warrantless when ICE served the noncitizen a warrant issued prior to the issuance of his NTA); (*Yeleshev v. Larocco*, 26-CV-2294-SJB, 2026 WL 1353806, at * 2 (E.D.N.Y. May 14, 2026) ("[A]n I-200 cannot be used to effectuate an arrest *before* an NTA has been issued") (emphasis in original); *Parada Cruz*, 2026 WL 1027441, at 2 ("If ICE wants to use a warrant, it must have a valid NTA in place"); *Aparicio v. Genalo*, 2:26-cv-1411 (NJC), 2026 WL 698872, at *5 (E.D.N.Y. Mar. 12, 2026) (same, collecting cases); *See also Ramirez Ovando v. Noem*, 810 F.Supp.3d 1209, 1226 (D. Colo. 2025) ("reject[ing] the notion that an I-200 warrant issued either *after* or *concurrent* with an arrest without an assessment of individual flight risk transforms an unlawful warrantless arrest into a lawful, warranted one") (emphasis in original & citations omitted). Defendants' document production shows that ICE routinely arrests people in this manner.

The field warrant ICE issued for the young man it violently arrested at 7-Eleven is dated August 4, 2026. Ex. K at 5. The NTA ICE is dated August 7, 2026, 3 days after the field warrant. Ex. L at 8. This is yet another reason why his arrest was warrantless. *Martinez-Salamanca*, 2026 WL 2083209, at *3. The warrant also contains notable falsehoods. The warrant indicates that it was issued based on "the execution of a charging document to initiate removal proceedings" and "biometric confirmation of the subject's identity and a records check of federal databases . . ." indicating that he was present in violation of the immigration laws. Ex. K at 5. But ICE issued the NTA three days after the arrest, Ex. L at 8, and the I-213 indicates that all record checks had either unknown or

negative results, Ex. K at 2. This is a separate reason rendering the warrant invalid and the arrest warrantless. *Yeleshev*, 2026 WL 1353806, at *7.

Plaintiff's review of Defendants' production found two additional examples of ICE effectuating arrests pursuant to invalid warrants, rendering the arrests warrantless, unlawful, and in violation of the PI. *Compare* Ex. C at 13 (I-200, dated June 29, 2026) *with id*. at 10 (NTA, dated July 1, 2026); *Compare* Ex. N at 1 (NTA, dated December 16, 2025) *with id*. at 5 (I-200, dated December 5, 2025).

Notably, Plaintiffs would not be able to identify these arrests as warrantless without the requirement that Defendants produce NTAs. Defendants' continued production of NTAs is necessary for Plaintiffs to monitor Defendants' compliance with the PI. *See* ECF 125, at **3–6.

## III. Defendants Do Not Accurately Report Relevant Arrests and Do Not Produce All of the Required Records.

This filing is evidence of Plaintiff's need to receive the I-213, I-200, and NTAs from Defendants to monitor compliance with the PI. However, Plaintiff's ability to monitor compliance with the PI is only as good as Defendants' production. To date, Defendants' production is significantly flawed.

Despite requesting the documentation for some category (c) arrests weeks ago, Defendants have yet to produce any documentation for nine individuals. Ex. O. Also, Defendants have produced incomplete sets of documents for eight additional people in category (c) for whom Plaintiffs requested documentation. *Id.* Defendants also produced incomplete sets of documents for 12 people Defendants identified as having been arrested without a warrant or pursuant to a field warrant. *Id.*

Timely production of these documents is essential to monitor compliance with the PI. Plaintiffs' investigation revealed that, of the people for whom Defendants have produced documents since the Enforcement Order, only 10 remain in ICE custody in Colorado. Ex. O.

**Conclusion**

Given that the Defendants have now made three monthly productions since the Enforcement Order, and ICE continues to remove individuals subject to unlawful arrests from the country at a rapid rate, Class Counsel believed it was necessary to inform the Court of Defendants' continued noncompliance with the statute, the PI, and the Enforcement Order.

DATED: August 26, 2026

Respectfully submitted,

*/s/ Timothy R. Macdonald*
Timothy R. Macdonald
Emma Mclean-Riggs
Sara Neel
Scott Medlock
ACLU of Colorado
303 E. 17th Avenue, Suite 350
Denver, CO 80203
Telephone: (303) 777-5482
tmacdonald@aclu-co.org

*Attorneys for Plaintiffs*