IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 1:25-cv-03183-RBJ

REFUGIO RAMIREZ OVANDO,
CAROLINE DIAS GONCALVES,
J.S.T.,G.R.R., and
East Colfax Community Collective,

Plaintiffs,

v.

MARKWAYNE MULLIN,
TODD LYONS,
GEORGE VALDEZ,
in their official capacities,

Defendants.

---

**ORDER on MOTION TO RECONSIDER**

---

On May 12, 2026 the Court issued a detailed order addressing plaintiffs' claims that the government was violating its earlier preliminary injunction order. ECF No. 112. The government seeks reconsideration of portions of that order. ECF No. 115. Having considered the motion, response, and reply, the motion is granted in part and denied in part.

**BACKGROUND**

Plaintiffs include four undocumented individuals who were arrested and detained by United States Immigration and Customs Enforcement ("ICE"). They

claimed that their arrests, and those of others similarly situated, violated 8 U.S.C. 1357(a)(2) which provides that an immigration officer may conduct a warrantless arrest only where "he has reason to believe," or probable cause, that an individual is: (i) unlawfully present in the United States and (ii) "likely to escape before a warrant can be obtained for his arrest." The gist of the complaint was that ICE agents had arrested plaintiffs without conducting a flight risk assessment as required by the statute and by a federal regulation, 8 C.F.R. § 287.8(c)(2)(ii). *See* ECF No. 1.

Following an evidentiary hearing on plaintiffs' motion for a preliminary injunction, the Court on November 25, 2025, found that ICE was engaging in unlawful arrests in violation of the statute and regulation. It certified a "Warrantless Arrest Class," defined as:

> All persons since January 20, 2025, who have been arrested or will be arrested in this District by immigration officers without a warrant and without a pre-arrest, individualized assessment of probable cause that the person poses a flight risk.

ECF No. 49 at 59. Among other things, the Court enjoined ICE from committing further violations of the statue and regulation and ordered all defendants to ensure compliance with the order. *Id.* at 61. The Court spelled out the specific factors ICE officers must consider in determining whether an individual is a sufficient flight risk to justify a warrantless arrest, and it directed defendants to provide randomly selected documentation to plaintiffs' counsel as a means of verifying compliance with the injunction order. *Id.* at 61–63. Defendants' appeal of this Court's order is

pending in the United States Court of Appeals for the Tenth Circuit. *See* ECF No. 56 (Notice of Appeal).

On March 3, 2026, plaintiffs, convinced that defendants were not complying with all requirements of the injunction order, filed a motion to enforce that order. ECF No. 79. That motion led to another evidentiary hearing and the issuance of a second lengthy order on May 12, 2026. ECF No. 112. The Court found that defendants had materially violated the preliminary injunction and it imposed additional requirements for the training of ICE agents and the documentation to be provided to plaintiffs' counsel. *Id.* at 58–60.

Now pending is defendants' motion for reconsideration of three issues addressed by the Court in the May 12, 2026 order.

**STANDARD OF REVIEW**

The Federal Rules of Civil Procedure do not explicitly provide for motions for reconsideration. Rules 59(e) and 60(b) are applied to such motions after entry of judgment. *See Montano v. Chao*, 07-CV-00735-EWN-KMT, 2008 WL 4427087, at *5 (D. Colo. Sep. 28, 2008). Before entry of judgment, motions for reconsideration "fall[] within a court's plenary power to revisit and amend interlocutory orders as justice requires." *McWhinney Holding Co. v. Poag*, No. 17-cv-02853-RBJ, 2019 WL 9467529, at *1 (D. Colo. Dec. 6, 2019). The grounds for granting such a motion are (1) an intervening change in the controlling law, (2) new evidence previously

unavailable, or (3) the need to correct clear error or prevent manifest injustice. *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1203 (10th Cir. 2018). But a motion to reconsider is not to be used to "reargue issues by rehashing facts and arguments already addressed or available, yet neglected, in the original proceeding." *Jaffrey v. Portercare Adventist Health Sys.*, No. 15-CV-02297-NYW, 2017 WL 3437986, at *2 (D. Colo. Aug. 10, 2017).

## ANALYSIS AND CONCLUSIONS

I address the three issues raised in defendants' motion in turn.

### A. **Immigration Officers in Wyoming**.

In its preliminary injunction order the Court certified a class of individuals "who have been arrested or will be arrested in this District." ECF No. 49 at 59. The Court enjoined ICE from unlawfully "effecting warrantless arrests in the District of Colorado." ECF No. 112 at 1. The Court also specified that immigration officers hired to serve the Denver Field Office may not make warrantless arrests unless and until they have received appropriate training. *Id.* at 58. Because the Denver Field Office includes both Colorado and Wyoming, defendants now argue that applying the order to the Denver Field Office is overbroad, and that the training requirements should only apply to officers "hired . . . to serve *in the District of Colorado*." ECF No. 115 at 3.

Plaintiffs respond, among other things, that defendants have not shown that the Denver Field Office hires officers to serve only Wyoming or only Colorado exclusively or that officers get independent training and supervision depending on whether they are working in Wyoming or Colorado. ECF No. 125 at 2. In reply, defendants reiterate that the preliminary injunction is directed at Colorado arrests. ECF No. 127 at 1.

Defendants' position is a bit difficult to understand. The statutory and regulatory requirements regarding warrantless arrests apply to ICE officers nationally. It would be absurd for ICE to contend that it can make unlawful arrests in Wyoming, just not in Colorado; or that ICE officers operating in Wyoming need not be trained on the requirements for making lawful warrantless arrests. Nevertheless, Defendants' position is technically correct. The Court's order was directed at arrests in Colorado. Therefore, the Court clarifies that its enforcement order, including the provisions regarding training and documentation, apply to all ICE officers in the Denver Field Office who are authorized to make arrests in Colorado, whether or not their typical assignment is in Wyoming. If there are officers who are assigned exclusively to Wyoming and are not authorized to, and will never make, arrests in Colorado, they are not covered by the Court's order.

**B. <u>NTA's</u>.**

A A Notice to Appear ("NTA") initiates a removal proceeding. In its preliminary injunction order, the Court noted, "[a]t the time an NTA is issued, or anytime thereafter until the conclusion of removal proceedings, immigration officers may issue a 'Warrant of Arrest,' known as a Form I-200, and under this authority, 'arrest[] and take[] into custody' the subject of the proceedings." ECF No 49 at 4 (last two alterations in original). In other words, an NTA must precede or be contemporaneous with issuance of a Form I-200 warrant. *Accord, Martinez-Salamanca v. Baltazar,* No. 26-cv-042410-PAB, 2026 WL 2083209, at *3 (D. Colo. July 20, 2026) ("Federal regulations state that a Form I-200 arrest warrant cannot be issued until the time that [an NTA] is issued or any time thereafter."). Nevertheless, in the preliminary injunction order, although the Court ordered defendants to produce certain documents, it did not require production of NTAs.

In this Court's Order Enforcing Preliminary Injunction, however, after finding "that defendants have materially violated the preliminary injunction," I granted additional relief not included in the original order. ECF No. 112 at 58. As relevant here, the order states:

> 9. Defendants SHALL provide to plaintiffs' counsel, within 30 days of this Order, in separately identified productions, all of the Form I-213s and the associated administrative warrants *and notices to appear*, if they exist, for all (a) warrantless arrests and (b) arrests in which the government claims they obtained a warrant after the encounter began, that have occurred in this District from the date of this Order, and for

> all (c) arrests in this District for which plaintiffs have requested documentation on a good-faith basis to believe the arrested individual was not a "target," from the date of the preliminary injunction.
>
> 10. On the 10th day of each month thereafter until the preliminary injunction or this Order is dissolved or vacated, defendants SHALL provide to plaintiffs' counsel, in separately identified productions, all of the Form I-213s and the associated administrative warrants *and notices to appear*, if they exist, for all arrests in categories (a) and (b) that have occurred in this District on a going-forward basis. Furthermore, defendants SHALL provide to plaintiffs' counsel the identified documents for arrests in category (c) within four (4) business days of the request.

*Id.* at 59 (emphasis added)

Defendants ask the Court to reconsider including NTAs in the documentation they must provide. They argue that NTAs do not affect the legality of a warrantless arrest, and therefore, they are not relevant to the enforcement of this Court's orders. Defendants acknowledge that in *Castañon Nava v. Dep't of Homeland Security,* 806 F. Supp. 3d 823, 847 (N.D. Ill. 2025), *aff'd in part*, 175 F.4th 828 (7th Cir. 2026), the court held that field warrants issued without a prior or concurrent NTA are not valid. However, in its enforcement order this Court stated that it "has no occasion to decide that issue" in the present case. ECF No. 112 at 48.[1]

[1] In context, the Court stated, "Like the district court in *Castañon Nava*, this Court has its doubts about the validity of field warrants unaccompanied by a prior or concurrent NTA. . . . However, the Court has no occasion to decide that issue here, and it does not do so." ECF No. 112 at 48. Issues concerning the validity of so-called "field warrants" have not been addressed to date in this case.

In response, plaintiffs argue that the NTAs help plaintiffs monitor whether the defendants are complying with this Court's injunction order. ECF No. 125 at 3. "[T]he existence or non-existence of an NTA and when it was issued are indicative of whether a particular arrest was warrantless. . . . [A]n NTA's contents can provide information as to whether an arrest was targeted and whether a warrantless arrest complied with the statutorily required flight risk analysis. Finally, for some arrests, an NTA may be the only document ICE can produce related to an arrest and thus provide the only window into whether the arrest was compliant with the Court's orders." *Id.*

As an example, plaintiffs posit a scenario where ICE arrests a "collateral," i.e., an individual who was not the target of ICE's investigation and who might not have had any previous contact with immigration personnel. In such a case, the NTA will necessarily issue after the arrest. Thus, the timing of the NTA would be evidence that the arrest was warrantless. *Id.* at 4.

In their reply, defendants reiterate that the Court has not decided whether an NTA must precede the issuance of an arrest warrant. ECF no. 127 at 2. That is not quite right. The Court did not decide whether there must be an NTA before a "field warrant" can issue. When ICE agents come upon undocumented collaterals they sometimes avoid making a "warrantless" arrest (which requires a particularized showing of flight risk) by detaining the person while they issue an administrative

warrant on the spot. As noted, the issues surrounding the validity of field warrants have not yet become part of this case. That does not mean that NTAs cannot provide relevant information to plaintiffs' counsel.

In their reply, defendants state that NTAs do not contain information about arrests, the existence of a warrant, or flight risk analysis. *Id.* But, as plaintiffs noted, the issuance of an NTA after an arrest does show either that the arrest was warrantless or that it was the subject of a field warrant. That is relevant information. It also provides background information about the arrestee's immigration status and history. The Court also notes that defendants do not assert that production of NTAs is unduly burdensome. The request for reconsideration of this piece of the Court's enforcement order is denied.

**C. Attorney's Fees and Costs.**

Defendants object to the last line of the enforcement order which provided, "Plaintiffs are awarded their reasonable fees and costs associated with enforcing the preliminary injunction." ECF No. 112 at 60. They argue that, per Fed. R. Civ. P. 54(d)(2)(A) and D.C.Colo.LCivR 7.1(d), the proper procedure is for plaintiffs to file a separate motion for attorney's fees. ECF No. 115 at 12. Though defendants acknowledge that plaintiffs have filed a separate motion for attorney's fees, *id.* (citing ECF No. 113), they argue that plaintiffs' motion relies on the Court's order that plaintiffs are entitled to fees and costs.

In terms of substance, defendants argue that they are entitled to sovereign immunity unless plaintiffs make a showing of waiver, such as by showing entitlement to fees under the Equal Access to Justice Act ("EAJA"). That would include a showing that the government's position was not substantially justified. *Id.* at 7–9, 14–15. Defendants also argue that any motion for attorney's fees is premature. To obtain an award of fees plaintiffs must be the "prevailing party," but per *Lackey v. Stinne,* 604 U.S. 192 (2025), plaintiffs are not made a prevailing party by obtaining a preliminary injunction; rather, they become a prevailing party when final judgment enters. ECF no. 115 at 9–11. Finally, they argue that the amount of fees requested must be supported by detailed information concerning the qualifications and experience of the individuals for whom fees are sought, the time spent, and the hourly rated charged. *Id.* at 14.

The Court has already addressed these issues in part. The Court granted defendants' motion to strike plaintiffs' motion for attorney's fees. ECF No. 117. The order reiterated that the Court had determined that plaintiffs are entitled to an award of fees, but it required the parties to confer about the amount of the fees, after plaintiffs provided supporting materials, and to attempt to reach an agreement on the amount. *Id.*

In response to defendants' arguments about fees and costs, plaintiffs assert that the Court has inherent powers to award attorney's fees as a sanction for violating

the Court's orders and to ensure compliance going forward. ECF No. 125 at 7–8. As for sovereign immunity, plaintiffs argue that 5 U.S.C. 702 is a waiver as to suits seeking equitable relief. ECF No. 125 at 9 (citing *United States v. Murdock Mach. & Engr. Co.,* 81 F.3d 922, 930 n.8 (10th Cir. 1996)); *cf. Hutto v. Finney,* 437 U.S. 678, 689–90 (1978) (the Eleventh Amendment does not bar awards against a state that disregards a federal order). Plaintiffs also claim that, in any event, the EAJA is a waiver of sovereign immunity. ECF No. 125 at 11. They say that they are the "prevailing party" as to the motion to enforce because they "succeeded on any significant issue in litigation which achieved some of the benefit the part[ty] sought in bringing suit." *Id.* at 13 (citing *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792 (1989)); *see Iqbal v. Holder,* 693 F.3d 1189, 1194-95 (10th Cir. 2012) (prevailing party status exists where the court "lend[s] its *imprimatur* to any change in the parties' legal relationship").

Regarding defendants' prematurity argument, plaintiffs distinguish *Lackey* on the basis that they are not talking about fees for the preliminary injunction; rather, they are seeking to invoke the Court's power to award fees for their work in enforcing a preliminary injunction already granted. ECF No. 125 at 14.

In reply, defendants tell the Court that none of plaintiffs' authorities "show a court awarding fees/costs against the *federal* government based on inherent authority." ECF No. 127 at 4. Defendants also claim that the Administrative

Procedure Act's waiver of sovereign immunity is limited to injunctive relief. *Id.* They also repeat that the EAJA provides for fees only to prevailing parties, and that consideration of a fee award now is premature under *Lackey*. *Id.* at 4–5.

I agree with plaintiffs that this Court has inherent powers to award fees as a sanction for violation of the Court's orders, including against the United States. While plaintiffs' authorities do not show a court awarding fees against the federal government based on inherent authority, defendants' authorities do not show that a court's inherent powers do not allow sanctions against the federal government when it violates a court's orders. I also do not agree that plaintiffs need to wait until final judgment is entered to seek fees. That might be true as to fees for work on the preliminary injunction, but not as to a sanction for violation of the injunction.

Therefore, the request for reconsideration of the order that plaintiffs are entitled to an award of fees with respect to work on the motion to enforce is denied. The Court expresses no opinion as to whether any future motion for attorney's fees should be made under the EAJA as well.

**ORDER**

Defendants' motion for reconsideration, ECF No. 115, is GRANTED IN PART AND DENIED IN PART.

Dated: September 24, 2026

R. Brooke Jackson
Senior United States District Judge