IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 1:25-cv-03183-RBJ

REFUGIO RAMIREZ OVANDO,
CAROLINE DIAS GONCALVES,
J.S.T.,
G.R.R., and
East Colfax Community Collective

Plaintiffs,

v.

MARKWAYNE MULLIN,
TODD LYONS,
GEORGE VALDEZ,
in their official capacities,

Defendants.

---

**ORDER re COMPLIANCE ISSUES**

---

On August 26, 2026, plaintiffs filed a "Status Report and Notice of Noncompliance" in which they claim that defendants are not complying with two orders previously issued by this Court. ECF No. 132. Defendants dispute plaintiffs' claims and evidence and recommend conferral before motions are filed. ECF No. 141. In the hope of motivating productive conferral, the Court offers its comments on the disputed items.

**BACKGROUND**

Plaintiffs include four undocumented individuals who were arrested and detained by United States Immigration and Customs Enforcement ("ICE"). They claim that ICE agents arrested them and other similarly situated individuals without a warrant and without conducting a flight risk assessment as required for a warrantless arrest by 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii).

Following an evidentiary hearing on plaintiffs' motion for a preliminary injunction, the Court found that ICE was engaging in unlawful warrantless arrests. ECF No. 49. The Court preliminarily enjoined ICE from arresting undocumented persons without a warrant or an individualized assessment that they posed a flight risk. The Court also directed defendants to provide randomly selected copies of certain documentation to plaintiffs' counsel as a means of verifying compliance with the injunction order. *Id.* at 61–63.

Approximately three months later, plaintiffs, convinced that defendants were not complying with all requirements of the injunction order, filed a motion to enforce that order. ECF No. 79. The Court conducted another evidentiary hearing and found that defendants had materially violated the preliminary injunction. The Court issued a lengthy "Order Enforcing Preliminary Injunction" on May 12, 2026. ECF No. 112. At the conclusion of that order, the Court imposed additional requirements for the training of ICE agents and the documentation to be provided to plaintiffs' counsel. *Id.* at 58–60.

Now another three months have passed, and plaintiffs believe that ICE is still not complying fully with either the preliminary injunction or the enforcement order. The issues in the order plaintiffs raised them follow.

**I. <u>Warrantless Arrests</u>.**

Defendants admit that ICE arrested five people without a warrant and provided Form I-213s for four of the five. ECF No. 132 at 2.[1] A Form I-213 is the document in which the arresting officer documents the facts and circumstances of a warrantless arrest. The I-213s, with one exception, do not suggest that the individual was likely to escape; and none of them contains particularized facts that could support that conclusion. *Id.* Defendants respond that the four individuals were arrested on May 1, 2026, prior to the Court's May 12, 2026, enforcement order and thus before officers received the training required by the Court in that order. ECF No. 141 at 2. COURT COMMENT: We should focus on ICE's conduct following the enforcement order.

Next, plaintiffs claim that for at least eight arrests where there was a warrant, the ICE officer was unaware of the warrant when it arrested the individual, rendering the arrest effectively warrantless. ECF No. 132 at 2–3. Defendants respond that one of the individuals was detained in December 2025, and he was

---

[1] The full names of the four individuals are restricted. Their initials are LGR, PRG, AGA, and AMA. ECF No. 132-A.

arrested when he attempted to escape. Defendants claim that Form I-213s for the other individuals show that the officers did perform a records check before the arrest and were aware of the warrants. ECF No. 141 at 2–3. COURT COMMENT: The Court did not address that scenario in its previous orders. There is a factual dispute regarding whether the agents confirmed the existence of a warrant before the arrests. Defense counsel should investigate in good faith, and if the agents did not do this, they should be counseled.

Plaintiffs also state that ICE showed a detainee a warrant, but when the individual told the ICE officers that he was not the person on the warrant, they responded that they did not care, broke his car window, pulled him out of the car, handcuffed him, and transported him to an ICE field office without asking him any questions, including his name. ECF No. 132 at 3–4. Defendants respond by citing a case which holds that a mistaken identity arrest does not violate the Fourth Amendment if the officer's mistake was reasonable. ECF No. 141 at 3. COURT COMMENT: The asserted facts appear to be credible. The mistaken identity was not reasonable, the follow up conduct was not reasonable, and the warrantless arrest violated the Court's enforcement order. The involved agents should be sanctioned, and the arrestee should be released if he is still in custody.

**II. Field Arrests.**

Plaintiffs claim that four individuals (ECS, WGA, BMP, CRS) were arrested without a warrant, and that a field warrant was issued after the fact. ECF No. 132-H. Defendants claim these were investigative detentions, not arrests. ECF No. 141 at 4. COURT COMMENT: Based on the I-213s, the detentions of ECS and WGA might have been detentions based on reasonable suspicion, i.e. "Terry Stops." The detention of BMP (by the two offices whose testimony at the enforcement hearing was not credible) was an arrest, but it took place before the enforcement order. The detention of CRS appears to be an unlawful warrantless arrest — he was encountered as a collateral and placed in handcuffs before any field interview and before ICE obtained an I-200.

Plaintiffs also claim that these same arrests were unlawful because there was no NTA before the field warrants were obtained. ECF No. 132 at 9. COURT COMMENT: As defendants note, whether there must be an NTA before a field warrant can be obtained is outside the scope of the enforcement order. ECF No. 141 at 10-11.

Plaintiffs claim that the facts in the I-213s for SN and DRM are contrary to the facts reported by the two individuals in plaintiffs' interviews. ECF No. 132 at 5-6. Defendants say that SN was arrested by the Aurora Police Department in an apartment where known Tren de Aragua gang members were found and was handcuffed and secured in a vehicle before being interviewed and arrested. ECF

No. 141 at 7. Defendants assert that this was an investigative detention. *Id.* COURT COMMENT: Being handcuffed and secured in a vehicle ordinarily goes beyond an investigative detention and is an arrest. Whether the facts regarding SN justified those measures for officer safety in this instance is difficult to gauge from the parties' submissions.

Plaintiffs claim that the detention of DRM before a field warrant was obtained was an unlawful arrest. ECF No. 132 at 5. Defendants again respond that it was an investigative detention. ECF No. 141 at 7-8. COURT COMMENT: DRM says he was pulled out of his truck during a traffic stop and handcuffed immediately upon telling offices that he did not have papers. If so, it was an arrest, not an investigative detention, and a subsequent field warrant would not cure the violation

Plaintiffs claim that DBDJ and JDB were unlawfully arrested. ECF No. 132 at 6-7. Defendants claim that while those individuals were in a truck, driver, JDB, "rammed" an ICE vehicle, and they were arrested attempting to escape. ECF No. 141 at 8-9. COURT COMMENT: DBDJ and JDB were collaterals to a targeted arrest of FBB. Whether JDB accidentally bumped into the ICE vehicle, which was positioned immediately behind JDB's vehicle, or "rammed" it, is a factual dispute that the Court cannot resolve on the parties' submissions. There presumably would be observable and perhaps significant property damage to the ICE vehicle if

Defendants' version is correct. However, DBDJ, an 18 year old who was a passenger, did not ram anything. It appears that he was pulled out of the truck, possibly via a broken window, put on the ground, and handcuffed. He was injured (broken wrist, hand laceration, lacerations to face). While this case is not about excessive force, the injuries tend to corroborate that this was an unlawful arrest. If DBDJ is still in custody, he should be released, ICE should pay his medical bills, and the officers who assaulted him should be sanctioned.

**III. <u>Documentation</u>.**

Plaintiffs claim that defendants have either not provided requested documents, or have provided incomplete documents, for 29 individuals. ECF No. 132 at 11. Defendants respond that the request regarding nine of the individuals has been withdrawn, that plaintiffs do have some documents that they claim they are missing, and that defendants will supplement their document production to try to fill gaps. ECF No. 141 at 12-13. COURT COMMENT: The production of documentation in compliance with the Court's orders should be an achievable baseline obligation. Deficient production indicates noncompliance either by counsel (unlikely) or the responsible ICE officials. Counsel should meet again with appropriate ICE officials and impress on them the importance of compliant production.

Dated: September 24, 2026

R. Brooke Jackson
Senior United States District Judge